(Decided 15th March, 1893.)

---

\*William S. Twilley vs. George T. Perkins and Benjamin T. Henly.

*Construction of Section 5 of the Act of 1890, ch. 85—Regulating use of Bridge by the Public—Police power—Bicycle riding—Burden of Proof—False imprisonment.*

Under section 5 of the Act of 1890, ch. 85, giving certain County Commissioners full power and authority to make reasonable

\* There is a note on the regulation of bicycle riding with the report of this case in 19 *Law Rep. Anno.* 632.

rules and regulations for the use of a particular bridge by the public, the commissioners are invested with the power to make a by-law prohibiting any person from riding a bicycle or tricycle over such bridge.

The onus of showing that such rule is unreasonable rests on the party denying its validity.

If the riding of a bicycle or tricycle over a public bridge be likely to frighten horses and imperil the lives of passengers on the bridge, a rule forbidding the riding of such vehicles over the bridge is reasonable.

A bridge keeper and constable are liable for false imprisoment, where after lawfully arresting a person for violating a proper rule regulating the use of a public bridge, they held him in custody subjecting him to the alternative of paying a penalty or of going to jail forthwith, instead of taking him at once before a justice of the peace, to be dealt with according to the direction of the statute. But if after being legally arrested for violating such rule, the offender is willing to pay, and does pay, to the officer making the arrest, the prescribed penalty rather than be taken before a justice of the peace, he has no cause of action against the officer for assault and battery or false imprisonment.

Appeal from the Circuit Court for Kent County.

The case is stated in the opinion of the Court. The judgment being for the defendants for costs, the plaintiff appealed.

The cause was submitted on briefs to Alvey, C. J., Bryan, Fowler, Page, Roberts, McSherry, and Briscoe, J.

*Thomas S. Hodson,* for the appellant.

Upon the facts the plaintiff is entitled to recover unless the arrest shall be shown to be lawful and the alleged authority under which it was made valid. 2 *Bishop's Crim. Law, sec.* 26; *Pike vs. Hanson, et al.,* 9 *N. H.,* 491; *United States vs. Lawson,* 101 *U. S.,* 169.

The authorities erecting a bridge are bound to construct it with a view to all the surroundings, and the

use for which the bridge is intended, so that it shall be reasonably safe for travel of all kinds. *Zimmerman vs. Conemaugh*, 2 *Central Reports*, 361. The omission of suitable railings is a negligent act. *Whittaker's Smith on Negligence*, 155; *Freeholders of Sussex vs. Strader*, 18 *N. J. L.*, 108, 35 *Am. Dec.*, 542, *note*.

Rule No. 9 is legislative. It is not within the power of a Legislature to confer on County Commissioners. It is part of the law-making power which cannot be delegated. A right of equality on highways is given to each citizen by the fundamental law on which our whole system of jurisprudence is founded. *Corfield vs. Coryell*, 4 *Wash. C. C.*, 380. County Commissioners are a quasi-corporation, and, not like municipal corporations, a part of the sovereignty—*Pain vs. Commissioners of Portage County, Wright, (Ohio,)* 417—they are public agents of the county with respect to all money concerns of the county, and a quasi-corporation for the purpose of suing and being sued. *Vankirk vs. Clark and Graham*, 16 *Serg. & R.*, 289. They are also a quasi-political corporation. *People vs. Hester*, 6 *Cal.*, 279.

They are also entrusted with certain matters of police, &c. *State, ex rel. Mason vs. County Comm'rs of Ormsby County*, 7 *Nevada*, 392. The best discussion of the powers of County Commissioners applicable to this case is to be found in *Bradshaw vs. Lankford*, 73 *Md.*, 428; and the gist of the decision is that they can have power vested in them only for local objects, whether executive or legislative, in its nature.

But the permanent stoppage of travel by any particular vehicle over a bridge is not a local object. It may affect any citizen of the State of Maryland or of any other State of the United States.

The power conferred by the Constitution on the Legislature to make laws cannot be delegated to any other power or authority. *Cooley's Con. Lim.*, 137. Munici-

Twilley *vs.* Perkins.

pal corporations are an exception to the rule; these are mere auxiliaries of the State Government, and in the important business of municipal rule the Legislature may create them at will, and vest in them certain powers of local regulation.

A bridge situated as this one is, is a part of the public highway. See *Foy vs. Lester,* 2 *Ld. Raym.,* 1171; *Washer vs. Bullitt County,* 110 *U. S.,* 564; *County Comm'rs of Talbot Co. vs. County Comm'rs of Queen Anne's County,* 50 *Md.,* 259; *Pumphrey vs. Mayor, &c., of Baltimore,* 47 *Md.,* 152; *City of Chicago vs. Powers,* 42 *Ill.,* 169; *City of Eudora vs. Miller,* 30 *Kansas,* 494; *Eric City vs. Schwingle,* 22 *Penn.,* 384.

All such rules must be reasonable. *State vs. Mott,* 61 *Md.,* 297. Rule No. 9 is unreasonable. *Commonwealth vs. Temple,* 14 *Gray,* 75; *Wager vs. Troy Union R. Co.,* 25 *N. Y.,* 532; *Imlay vs. Union Branch R. R. Co.,* 26 *Conn.,* 255; *Coombs vs. Purrington,* 42 *Maine,* 332; *Taylor vs. Goodwin, L. R.,* 4 *Q. B. Div.,* 228; *Moses, et al. vs. Pittsburgh, Ft. W. & C. R. R. Co.,* 21 *Ill.,* 522.

In *Macomber vs. Nichols,* 34 *Mich.,* 214, Judge Cooley says: "A highway is for the use of the public without distinction. Persons making use of horses have no right superior to those using other ways. Improved methods are admissible and can not be excluded from existing public roads." A bicycle is a carriage or vehicle. *State vs. Collins,* 16 *R. I.,* 371, 3 *L. R. A.,* 394. It has all the rights of any other vehicle. *Schimpf vs. Sliter,* 64 *Hun,* 463.

When land is taken or dedicated for a town street, it is unquestionably appropriated for all the purposes of a town street; not merely for such purposes to which such streets were formerly applied, but those demanded by new improvements and new wants. *Cooley's Const. Lim.,* 694; *Moses, et al. vs. Pittsburgh, Ft. W. & C. R. R. Co.,* 21 *Ill.,* 522.

The right of travel in highways and streets is one of those privileges and immunities, in their nature fundamental, and is one of those privileges and immunities guaranteed by the Constitution of the United States, (Art. 4,) and which no State Legislature can take away. *Corfield vs. Coryell,* 4 *Wash. C. C.,* 380.

*Marion de K. Smith,* for the appellees.

The Legislature has the power to confer upon County Commissioners, being corporations, the right to make such rules and regulations. *State vs. Garibaldi,* 44 *La. Ann.,* 809; *People vs. Wilson,* 16 *N. Y. S.,* 583. And said corporations may pass an ordinance restricting the use of certain highways to teams or vehicles of a certain burthen. *People vs. Wilson, supra.*

Commissioners in adopting such a rule acted solely for the public, induced by public considerations, and apart from the authority conferred by the Act of Assembly giving them the right "to make such reasonable rules and regulations for the use of said bridge by the public." Such act was in the exercise of a sound discretion and justifiable. *Atwood vs. Partree,* 56 *Conn.,* 80.

Rule No. 9, does not, neither is it intended to prohibit the passage of bicycles over said bridge; for the rider having dismounted may push the machine over the bridge, the intendment of the rule being to protect life and property; for some horses, ordinarily safe, become frightened at bicycles whilst ridden along the public highways. In the streets and public roads more ample opportunity is afforded drivers to avoid serious accidents, but in places, by their nature, more than ordinarily dangerous, a greater care and prudence should be exercised and required. And as this Court has said in the case of *Turner and Stoddard vs. Holtzman,* 44 *Md.,* 157, "a person traveling on the public highway must do so in such a way as not unnecessarily or unreasonably to

Twilley *vs.* Perkins.

impede the exercise of the same right by others." Also, see *Rex vs. Cross,* 3 *Camp.*, 226; *Rex vs. Jones,* 3 *Camp.*, 230; *People vs. Cunningham,* 1 *Denio,* 524; *Wood on Nuisances, sec.* 529.

Owners of a particular kind of vehicle, as a bicycle, which from its peculiar form or appearance or from the unusual manner of its use, frightens horses, or otherwise imperils passengers over a road, has no right to use such vehicle on the road, and the Legislature may regulate the use of it. Statutes forbidding use of bicycles or other non-horse vehicles upon roads without permission of superintendent, are not unconstitutional. Courts cannot declare such statutes void unless manifestly so unjust and unreasonable as to destroy the lawful use of property. *State vs. Yopp,* 97 *N. C.,* 477.

ALVEY, C. J., delivered the opinion of the Court.

The plaintiff brought this action against the defendants for an assault and battery and false imprisonment. He alleges, 1st, that he was illegally arrested and detained; and, 2nd, that he was, without legal or reasonable cause, assaulted by the defendants, and taken into custody by them, and under threats of further detention and imprisonment in jail, he was required to pay the sum of $2.50 in order to regain his liberty. The defendants pleaded not guilty.

The material facts of the case, as set forth in the record, are these:

The bridge at Chestertown over Chester river, the river dividing Kent and Queen Anne's Counties, was originally constructed by the Chester Bridge Company, and was a toll bridge. This bridge, by the authority of the Legislature of the State, was purchased by the two counties, Kent and Queen Anne's, with the view and for the purpose of making it a free public bridge and thoroughfare, to be under the joint management and con-

trol of the County Commissioners of the two counties. This was authorized by the Act of 1888, ch. 376. The Act of 1890, ch. 85, is supplemental to the original Act of 1888, and makes some changes in the manner of accomplishing the purchase, and as to how the bridge shall be managed and controlled by the Commissioners of the two counties, after the same should be turned over to them. From the time of the consummation of the purchase, it is declared by the 3rd section of this latter Act of 1890, "that thereafter said bridge shall be taken, held and perpetuated, as a free public bridge between said counties." And by the 5th section of the same Act, it is provided that the Commissioners of the two counties, *"shall have full power and authority to make reasonable rules and regulations* for the use of said bridge by the public, and for the protection of said bridge and other property belonging thereto or therewith, *and to enforce the observance thereof by imposing upon the party violating the same, any reasonable fine* not exceeding ten dollars for any violation thereof, *which fines* shall be collected as small debts are now collected, and shall be recovered in the name of said Commissioners before any justice of the peace of either of said counties in which the party violating such rules and regulations shall be found, and on failure or refusal to pay, and inability to collect by legal process, the party so fined shall be committed to the county jail of the county for a period not exceeding ten days, in the same manner as commitments are made for fines imposed by the Circuit Courts of this State, on conviction for misdemeanor," etc.

In July, 1890, after the sale of the bridge had been effected to the counties, and the bridge turned over to their control, the Commissioners of the two counties met and adopted rules and regulations for the use of the bridge by the public; but the only one of which rules that has been inserted in the record is this: "No.

Twilley *vs.* Perkins.

9. Persons will not be allowed to *ride* a bicycle, tricycle or velocipede over the bridge." Notwithstanding this prohibition, the plaintiff, on the 18th of June, 1891, rode a bycicle over the bridge from the Kent County side to the Queen Anne's side, and on his return he was arrested and held in custody by the defendants—Perkins being the bridge keeper, and Henly a constable of Kent County; and that the arrest was made without the issuance of any warrant. It is conceded that these parties, so acting, supposed that they were acting under and as authorized by the Act of 1890, ch. 85; and that they used no more force or violence towards the plaintiff than was necessary. That these parties were charged with the duty of enforcing the rules made by the Commissioners of the two counties; and that the defendants did compel the plaintiff to pay the sum of $2.50 as a penalty for the violation of said rule No. 9, under the alternative of going to jail forthwith if he refused to pay, which alternative the defendants were then and there ready to enforce; but upon being paid the said sum the defendants allowed the plaintiff to go at liberty.

It was further shown that the bridge is built of wood, and has wood railings, and is about one-third of a mile long from shore to shore; and that the depth of the water under the bridge is between eight and twenty feet, the greatest depth being in the channel of the river. It was also shown in proof that some horses, ordinarily gentle, are frightened at bicycles ridden by persons along the public highways, and that some horses never get accustomed to them; and that horses becoming frightened at bicycles, ridden by persons on the bridge, would endanger the lives of persons driving such horses. The plaintiff offered proof tending to show that, as a general rule, horses, ordinarily gentle, and well broken, do not become frightened at bicycles. That while the bridge was a toll bridge persons were accustomed to ride over it on bicycles, and no accidents occurred.

Twilley *vs.* Perkins.

The plaintiff objected to all the evidence offered by the defendants in justification, but the objection was overruled; and he then offered, upon the whole evidence, six prayers, the first of which was granted, and all the others were refused. And the defendants offered two prayers, both of which were granted; and by the second of which the Court ruled that if the facts as shown in proof on the part of the defendants were found to exist, "then the rule or by-law referred to in the evidence is a reasonable and proper rule or by-law, *and the verdict must be for the defendants.*"

Upon the objection to the evidence, and the rulings upon the prayers, two questions are presented. The first and principal one is, whether the County Commissioners, under the power given by the 5th sec. of the Act of 1890, ch. 85, to make reasonable rules and regulations for the use of the bridge by the public, had the right to make any rule or by-law whereby all persons are denied the right to *ride* a bicycle, tricycle or velocipede over the bridge? and if they had the power, then, secondly, whether the 9th rule or by-law, given in evidence, and the manner of enforcing it, as shown in this case, was a proper exercise of such power?

1. We do not suppose that it could be seriously disputed that it is competent to the Legislature, in the exercise of its police power, and general right to regulate the use of the highways of the State, to restrict, and even forbid, the use of such vehicles as bicycles or tricycles on the highways, if they in fact be dangerous to the general travelling public. All individual rights are more or less subject to limitations and restrictions in their exercise, in the interest and for the protection of society generally; and if it be true that such vehicles as bicycles or tricycles are dangerous on the public highways, it would seem necessarily to follow that the Legislature may reasonably restrict their use,

rather than subject the public at large to the risk of danger in the enjoyment of a common right. And if such restriction may be made and enforced with respect to a common highway generally, *a fortiori* may it be made and enforced with respect to a bridge, such as that described in the evidence in this case. Indeed, it is a settled principle, that it is the obligation to the public of those entrusted with the duty of maintaining and governing the use of the public highways, to make and keep them as free of danger to the general public as can reasonably be done.

Assuming then, that the power exists in the Legislature of the State, the question is, whether the terms employed in delegating the power to the County Commissioners be sufficient;—the terms being that they "shall have *full power and authority* to make reasonable rules and regulations for the use of said bridge by the public;" that is to say, such *full power and authority* as the Legislature could delegate to them for the purpose of regulating the use of the bridge, in such reasonable manner, as would best subserve the interest and protection of the general travelling public. We are of opinion that the terms employed are sufficiently comprehensive to invest the Commissioners with the power to make a by-law forbidding any person from riding a bicycle or tricycle over the bridge. And such rule or by-law when made, must be taken as *prima facie* reasonable, and the *onus* of showing that it is *unreasonable* rests on the party denying its validity. It must be observed that the rule or by-law here attempted to be enforced, does not deprive the party of the use of his property; it only forbids the *riding* of the bicycle or tricycle over the bridge. He can take or roll his bicycle or tricycle over the bridge, and then ride it at pleasure. He is only restrained from riding it over the bridge, because it may imperil the safety of others on the bridge

with equal rights of passage with himself. He has no right to insist upon the use of his property or vehicle on the common highway in a manner that may likely produce danger or injury to others who are lawfully exercising their rights in the ordinary use of their property. If, therefore, it be true, as supposed by the Commissioners, and found by the Court in this case, that the riding of a bicycle or tricycle over the bridge would likely frighten horses and imperil the lives of passengers on the bridge, it was not only reasonable but the duty of the Commissioners to forbid the riding of such vehicles over the bridge.

This is not a new question now for the first time presented.

In the case of *State vs. Yopp,* 97 *N. C.,* 477, the question was as to the validity of a statute which forbid every person to use upon the road of a particular company, a bicycle or tricycle, or other non-horse vehicle, without the express permission of the superintendent of said road," etc.; and it was held by the Supreme Court of that State, that such regulation was clearly within the police power of the State, and was in all respects reasonable and valid. In that case it was shown, as stated by the Court, that the use of these vehicles on the road materially interfered with the exercise of the rights and safety of others in the lawful use of their carriages and horses in passing over the road; and that, in repeated instances, horses became frightened at them, and carriages were thrown into the ditches along the side of the road. In that case it was contended, as it has been contended in this, that confiding such power of exclusion (conceding the Legislature to have the power,) to the discretion of a subordinate officer was arbitrary and unjust; but the Court said that the officer in control of the road was bound to exercise the discretion vested in him honestly, fairly and reasonably, and for the sole

purpose of effectuating the intention of the statute, and the protection of the public; and that there was nothing unreasonable in the exercise of his discretion in excluding the bicycle.

And so in New York, in regard to the public parks and squares, it has been held that an ordinance or by-law, made by the Park Commissioners, in pursuance of a general power of regulation under a statute, excluding from the parks and squares all bicycles and tricycles, was valid and reasonable. By the statute of that State of 1871, ch. 290, it is provided that the Board of Commissioners "shall have the full and exclusive power to govern, manage and direct the said several public parks, squares and places; to pass ordinances for the regulation and government thereof, etc.; and all persons offending against such ordinances shall be deemed guilty of a misdemeanor, and be punished on conviction," etc. In the matter of *Wright, et al.,* on application for *habeas corpus,* 29 *Hun,* 357, (*S. C. in* 65 *How. Pr. Rep.,* 119,) the petitioners were arrested for violating the ordinance, which provided "that no bicycle or tricycle should be allowed in the Central or City Parks;" and it was held that such ordinance was valid, and could not be held void as being unreasonable.

We are clearly of opinion, therefore, both upon reason and authority, that the County Commissioners had power, under the statute, to make a rule or by-law forbidding all persons from riding bicycles or tricycles over the bridge.

2. With respect to the second question, we are inclined to think that the bills of exception do not present the case here as fully as it was presented to the Court below. We must take the case, however, as the record presents it here. There is, inserted in the record, but one of the rules or by-laws made by the Commissioners to regulate the use of the bridge, and that is the ninth, and it

Twilley *vs.* Perkins.

makes no reference whatever to any penalty or fine prescribed by the Commissioners for its violation. The statute requires the Commissioners to exercise their discretion in fixing or imposing upon the party violating the rules or by-laws to be made, any reasonable fine not exceeding ten dollars, to be collected as small debts are collected, before a justice of the peace, &c. The power conferred is, to make reasonable rules and regulations, &c., "and *to enforce the observance* thereof by imposing upon the party violating the same, any reasonable fine not exceeding ten dollars for any violation thereof, *which fines* shall be collected as small debts are now collected, and shall be recovered in the name of the Commissioners before any justice," &c. The statute manifestly intends that the Commissioners of the two counties, as the governing body to whom the discretion is confided, shall exercise their discretion in imposing fines, having reference to the nature and character of the offending act. A by-law to be valid must not only be reasonable but certain; indeed, it cannot be reasonable unless it be certain. Or, as Judge COOLEY says, "A by-law, to be reasonable, should be certain. If it affixes a penalty for its violation, it would seem that such penalty should be a fixed and certain sum, and not left to the discretion of the officer or Court which is to impose it on conviction (citing cases); though a by-law imposing a penalty not exceeding a certain sum has been held not to be void for uncertainty;" citing the case of *Mayor and Aldermen of Huntsville vs. Phelps,* 27 *Ala.,* 55, overruling the previous case of *Mayor and Aldermen of Mobile vs. Yuille,* 3 *Ala.,* 137. *Cooley, Const. Lim.,* (6*th Ed.,*) 243. See, also, to the same effect, 1 *Dil. Mun. Corp.,* (3*rd Ed.,*) *secs.* 337, 338, 339.

Here, it appears from the exception taken, that the plaintiff violated the rule or by-law, No. 9, and that he was arrested therefor, and that the defendants were

authorized to make the arrest. It was their duty at once to take the offender before a justice of the peace, to be dealt with according to the direction of the statute. But, instead of so doing, it appears they put the plaintiff to the alternative of paying $2.50, as a penalty, or of going to jail forthwith. This they had no right to do; and to the extent that they held him in custody on such alternative the imprisonment was false and without legal justification. But if, after the legal arrest, the plaintiff was willing, and did pay, the $2.50, as the penalty prescribed by a by-law made by the Commissioners, rather than be taken before a justice, he only performed his legal obligation incurred for his unjustifiable act, and he can have no cause of action against the defendants for the discharge of their duty.

It follows that the judgment must be reversed, and a new trial awarded.

> *Judgment reversed, and*
> *new trial awarded.*

(Decided 15th March, 1893.)