## MOORE *v.* THE DISTRICT OF COLUMBIA.

BICYCLES; POLICE REGULATIONS, REASONABLENESS OF; EVIDENCE.

1. A defendant in the Police Court of this District charged with violating Art. X, section 30 of the police regulations, providing that no bicycle shall be ridden on the streets of Washington within the city limits, with the lower end of the handle bars on a plane lower than four inches below the top of the saddle at its centre, may introduce extrinsic evidence to show that the regulation is unreasonable and void.
2. Where that court in such a case, notwithstanding the introduction of such evidence, rules that the regulation is on its face reasonable and valid, and thereupon convicts the defendant, its judgment will on appeal be reversed.

No. 777. Submitted April 5, 1898. Decided May 3, 1898.

IN ERROR to the Police Court of the District of Columbia. *Judgment reversed.*

The facts are sufficiently stated in the opinion.

*Mr. D. S. Mackall* and *Mr. J. A. Maedel* for the plaintiff in error.

*Mr. S. T. Thomas,* attorney for the District of Columbia, and *Mr. A. B. Duvall,* assistant attorney, for the defendant in error.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

This case is brought here on writ of error from the Police Court of this District, and presents the question of the right to ride bicycles of a certain structure on the streets of the city of Washington, in violation of the terms of police regulation No. 30.

The defendant, Frederick W. Moore, the plaintiff in error, was charged by information in the court below, with having, on the 8th day of January, 1898, on Sixth street, in the city of Washington, ridden a certain bicycle, "with the lower end of the handle bars on a plane lower than four inches below the top of the saddle at its centre, contrary to and in violation of the police regulations of the District of Columbia." The defendant pleaded not guilty, and was tried and convicted, and was sentenced to pay a fine of five dollars, and in default thereof to stand committed to the workhouse for fifteen days.

The Commissioners of this District are authorized by the act of Congress of January 26, 1887, to make and enforce *usual and reasonable* police regulations, and, among other things "to regulate the *movements of vehicles* on the public streets and avenues, for the preservation of order and protection of life and limb." And in addition to this provision, the Commissioners, by joint resolution of Congress of February 26, 1892, "are authorized and empowered to make and enforce all such *reasonable and usual* police regulations *as they may deem necessary for the protection of lives, limbs, health, comfort and quiet of all persons,* and the protection of all property within the District of Columbia."

It was in pursuance of the power thus delegated, that the Commissioners of the District made and published, among others, the following regulation relating to the use of bicycles on the streets and avenues of the city, and which regulation was in force at the time of the commission of the offence charged.

Article X, section 30, as amended, provides that  . . . "Every bicycle on a public highway shall at all times be under the control of the rider.  And inasmuch as safety in passing with rapidly moving vehicles requires that the riders or drivers approaching each other shall each be able to judge of the probable movement of the approaching vehicle, no cycle shall be ridden on the streets within the city limits with the lower end of the handle bars on a plane lower than four inches below the top of the saddle at its center, and the rider *shall at all times keep his head in such a position* as to command a view ahead of not less than three hundred feet.  But this provision shall not be applicable to members of the bicycle squad of the police force."

At the trial it was proved in support of the prosecution, and the facts as proved were admitted to be true, that on the 8th day of January, 1898, the defendant was riding on a bicycle on one of the streets of the city, and that the lower end of the handle bars on the said bicycle were on a plane lower than four inches, to wit, between seven and eight inches below the top of the saddle at its center; that the defendant was in all other respects complying with the provisions of section 30 of the police regulations.  And this being all the evidence offered in chief, the prosecuting attorney rested the case.

The defendant then proved by quite a number of witnesses, many of whom were expert bicycle riders, that the effect of enforcing the regulation would be to deprive the defendant and many others of the use of their private property, by preventing the use of their bicycles, constructed as that belonging to the defendant; and that said regulation was unusual and unreasonable, and that it was unnecessary, unjust and oppressive.  The prosecution then produced evidence in rebuttal by quite a number of witnesses, to show the contrary of the facts proved on the part of the defendant.

Upon the evidence thus produced, and upon the whole case, the defendant asked the court to rule as matter of law,

that the portion of the 30th section of the police regulations hereinbefore quoted, relating to bicycles, requiring the lower end of the handle bars on such vehicles to be on a plane not lower than four inches below the top of the saddle at its center, (1) is unconstitutional and void; (2) that the Commissioners had no power to enact any such regulation; (3) that even if the Commissioners had the general power to enact a regulation upon the subject, that said portion of said regulation here involved is unreasonable, unusual, unjust and oppressive, and deprives the defendant of the use and enjoyment of his property. But the court refused to make any of the rulings as requested; and ruled that the portion of the regulation here in question was constitutional and valid; that the Commissioners had power to make the regulation; and that the regulation *on its face was usual, reasonable and valid*; and thereupon convicted the defendant. From which rulings the defendant excepted.

These several rulings were assigned as error at the hearing in this court.

With respect to the question of the unconstitutionality of the regulation attempted to· be enforced, we are clearly of the opinion that there is no foundation for that objection. The power of Congress over this District is plenary; and the power delegated to the Commissioners by the act of 1887, and the joint resolution of 1892, is sufficiently comprehensive to embrace the power to make and enforce the regulation complained of by the defendant. The limitations or restrictions imposed by the acts of Congress upon the exercise of the power are only that the regulations made in pursuance thereof shall be both *reasonable and usual* in their character and manner of enforcement. If it be shown and determined that the regulations, or any material parts thereof, are unusual or unreasonable, they would be inoperative and void, to the extent that they are so unusual or unreasonable, because, in such case they would not be within the power delegated by Congress. For it is a settled principle that

municipal ordinances or regulations can not enlarge or change the legislative grant of power to the municipal agency.

And even without respect to the special limitations or restrictions imposed by the acts of Congress, and in the absence of express delegation of authority, all bylaws, ordinances, and police regulations of municipal corporations, must be reasonable and not inconsistent with any statute of the legislature, nor with the general principles of the common law that prevails in the State or District, particularly those having relation to the liberty of the citizen or the rights of private property. Nor must any ordinance or regulation be unnecessarily oppressive to the citizen; nor can an ordinance or regulation be legally made and enforced which contravenes a common right, unless the power to do so be plainly conferred by legislative grant. 1 Dill. Mun. Corp., Secs. 319, 320, 325; *Yick Wo* v. *Hopkins*, 118 U. S. 356, 371.

But the municipal government usually possesses the power, either by express grant, as in the present case, or by virtue of their general authority, to make bylaws and ordinances relating to the public safety and good order of the inhabitants; to *regulate* the rate of speed of the travel of vehicles in the public streets; the route or street over which omnibuses, stage coaches, drays, etc., may run; the time of day in which the streets may be used for certain purposes; to interdict stoppages in the streets to the delay of others; to exclude vehicles of all kinds from entering upon or passing over the sidewalks, etc. And it has been decided in many cases that bicycles and tricycles are vehicles within the meaning of that term, and are subject to municipal regulation as are other vehicles that travel upon the streets. *Twilley* v. *Perkins*, 77 Md. 260; *State* v. *Yopp*, 97 N. Car. 477; *Taylor* v. *Goodwin*, L. R. 4 Q. B. Div. 228. The public safety and convenience may require regulations of this character, but they must not, unless made by *virtue of*

*specific authority*, be unreasonable, or improperly in restraint of trade, or of the exercise of personal rights; or of the lawful use of private property. *Comm.* v. *Stodder*, 2 Cush. 562; *Comm.* v. *Robertson*, 5 Cush. 438.

But in a case such as the present, the question whether the regulation is reasonable or unreasonable and oppressive to the citizen, in the exercise of his rights and in the use of his private property, is more or less a question of fact. The bicycle is a vehicle of comparatively recent use upon our streets, and is of various construction. Its safe use upon the streets may depend greatly upon the expertness of the rider, as well as upon the construction of the vehicle itself. If the vehicle, such as that of which the defendant is accused of riding on the streets, is ordinarily safe to persons traveling the streets, when used by a person of ordinary care and skill in riding, then there would seem to be no reasonable necessity for excluding the use of such vehicle on the streets; and the regulation by which such vehicle is excluded from the street may be said to be unreasonable, and to operate to deprive the defendant of the lawful use of his property. But, on the other hand, if the ordinary and reasonably careful use of the vehicle on the streets in any manner tends to endanger and annoy the traveling public on the streets, and this by reason of the nonconformity in the construction of the vehicle to the requirement of the regulation, then the regulation is reasonable and proper, as applied in restraint of the use of the vehicle on the streets.

The regulation is required to be reasonable and usual; and it was competent to the defendant to show that, in its application to his vehicle, it is both unreasonable and unusual, and therefore unnecessary to effect the purposes contemplated by the acts of Congress under which the regulation was made. He introduced evidence for this purpose, but that evidence appears not to have been considered by the court below, in holding the regulation to be reasonable and valid on its face, without regard to extrinsic facts. In this we

think the court erred. The court should have considered the facts as proved, in connection with the regulation.

In holding that the regulation "on its face was usual, reasonable and valid," the court, of course, excluded all consideration of the evidence introduced by both the defendant and the prosecution. But, as we have said, it was the right of the defendant to show, if he could, by introducing extrinsic evidence, that the regulation was both unusual and unreasonable as applied to his vehicle, and this could only be done by the practical test of experience of those capable of making an ordinary skillful use of the particular vehicle, or vehicles, constructed on the same plan and model—by showing that the ordinary use of such vehicles was reasonably safe to the streets and the traveling public thereon. The *onus* of thus showing rests, of course, upon the defendant.

"What is reasonable," says Dillon (Mun. Corp., Sec. 338), "depends upon the nature of the offense charged and the circumstances." Of course, the circumstances must be shown and considered. The question of the right to introduce extrinsic evidence to show that the ordinance or regulation sought to be enforced was unreasonable, arbitrary and oppressive in its operation, is fully illustrated by the cases of *Yick Wo* and *Wo Lee* v. *Hopkins,* 118 U. S. 356. In those cases, extrinsic evidence of the application of the ordinances and the manner of their execution, was admitted; and the court, in referring to the aid derived from the extrinsic evidence, said: "In the present cases we are not obliged to reason from the probable to the actual, and pass upon the validity of the ordinances complained of, as tried merely by the opportunities which their terms afford of unequal and unjust discrimination in their administration. For the cases present the ordinances *in actual operation;* and the facts shown establish an administration directed so exclusively against a particular class of persons as to warrant and require the conclusion that, whatever may have been the intent of the ordinances, as adopted, they are applied

by the public authorities charged with their administration, and thus representing the State itself, with a mind so unequal and oppressive as to amount to a practical denial by the State of the equal protection of the laws which is secured to the petitioners, as to all other persons, by the broad and benign provisions of the Fourteenth Amendment of the Constitution of the United States." Page 373. See, also, the case of *Railroad Co.* v. *District of Columbia,* 10 App. D. C. 111.

By the act of Congress of March 2, 1897, providing for writs of error from this court to the Police Court of this District, this court has no power to review and decide upon the facts of the case. Its power is of a special nature, and that is to review questions of law that have been presented to and decided, or refused to be decided, by the court below and certified to this court by bill of exception. The question *of fact,* as presented to the court below, as to whether the facts in proof were sufficient to show that the regulation in question was reasonable or unreasonable, is a question, on the proof in the case, that this court is without authority to decide the one way or the other. But where, as in this case, the court erroneously rules upon the construction and application of the regulation in question, upon its face alone, and without regard to the facts in proof, there is such error in law as requires this court to reverse the judgment and to remand the cause that a new trial be had.

The judgment below is therefore reversed and a new trial awarded; and it is so ordered.

*Judgment reversed and new trial ordered.*