See also D.C., 243 F.Supp. 203.

**UNITED STATES of America,
Plaintiff,
v.
William H. FULLER, Defendant.**

**Cr. No. 898-64.**

United States District Court
District of Columbia.

May 26, 1965.

David Epstein, Asst. U. S. Atty., Washington, D. C., for the Government.

James K. Hughes, Washington, D. C., for defendant.

HOLTZOFF, District Judge.

During the trial of this case, in which the defendant, William H. Fuller, is charged with murder and rape, the Court has conducted a preliminary hearing on the questions of admissibility, first, of oral statements made by the defendant to a police officer at or about the time of his arrest; and, second, the admissibility of certain articles seized at the defendant's home pursuant to a search warrant. The two matters will be considered separately.

Counsel for the defendant raises two issues in respect to the admissibility of an oral statement or series of statements made by the defendant to the police officers at or about the time of his arrest. He interposes, first, the issue of voluntariness, and, second, the question of admissibility under the rule of the Mallory case (Mallory v. United States), 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479. These points are raised by appropriate objections. In view of the nature of the case and of possible vital importance of the evidence and its effect on the outcome of the trial, the Court held a full and elaborate hearing as to the circumstances under which the statements were made.

■ ■ The Court will consider the two objections to the admissibility of statements separately, because the two are independent of each other and are governed by entirely different principles. The objection as to voluntariness is directed to the very foundation of justice, because a confession or a damaging statement obtained by coercion is abhorrent to the standards of modern Western civilization. Coercion is not to be limited merely to the use of physical violence against the person making the statement. It may comprehend mental or moral pressure of a kind that deprives the person, in whole or in part, of his free will and of his mental control.

The police officers involved in this case and the defendant both testified concerning the events that preceded the defendant's statements and the circumstances under which they were made. It is interesting to observe that there is very little difference in the two versions, except as to minor details, such as are always likely to be present when two or more persons give an account of the same episode.

The body of the deceased woman was found on the morning of August 17, 1964 in an alley in back of the 3900 block of

14th Street in this city. Officer Robert M. Boyd of the Homicide Squad of the Metropolitan Police Department responded to a call received by the Police Department, and, accompanied by Officer Alexander of the same Squad, arrived at the place where the body was found. He observed the corpse lying on its back in the rear of one of the buildings that was located facing 14th Street.

In addition to observing the body and having photographs taken by the Identification Bureau of the Police Department, the officers made a careful search of the vicinity. They found a number of articles strewn around the neighborhood. Among them was a woman's underclothes, a woman's boot, some black hair, a key, and a little red address book. These articles were scattered around the locality. The officers discovered that there appeared to be blood on the rear door of one of the shops and chipped off particles of wood from the door upon which the alleged blood stains were found. They gathered particles of paint that they scraped up from the rear of the same shop and that were observed on the concrete. They found a button which seemed to be missing from a dress that the deceased was wearing when her body was found.

Upon examining the little red address book they noticed the name William H. Fuller with an address written in it. They proceeded to that address, identified themselves to the occupant, who opened the door and who gave his name as Fuller. He stated that William H. Fuller was his son and that his son lived at that address with him. They ascertained from the father that William H. Fuller, the defendant, was employed by the Washington Suburban Sanitary Commission at an office located in nearby Montgomery County, Maryland.

They proceeded then to the Montgomery County police station in Silver Spring, Maryland, and secured the assistance of a Montgomery County police officer, who accompanied them to the office in Maryland where the defendant

was said to be employed. Upon arrival at the office at about four p. m. the same afternoon, they identified themselves to the person in charge and stated that they wished to talk to Fuller. The latter was located and brought out to meet the officers. Officer Boyd testified that he told Fuller that they would like to talk to him concerning an incident that happened in the District of Columbia, that he did not have to talk if he did not want to, but that if he was willing to talk this interview could take place right there or at the Silver Spring police station. He chose the latter alternative. He was told that he was not under arrest.

He was then driven to the Silver Spring police station in an unmarked Police Department car, arriving there at about 4:15 p. m. The defendant's version is that the officers did not give him the option of being interviewed at his place of employment or at the police station, but that he was told that they wanted to talk to him at the police station. This minor difference is of no consequence, although the Court is impressed by what appears to be the more accurate memory for details exhibited by the police officers.

The defendant admits that he was not told that he was under arrest and, in fact, he never was told, he testified, that he was under arrest. He testified that he considered himself under arrest because he thought that he had to go wherever the police wanted him to go. Admittedly he was not handcuffed or under any restraint of any kind. Upon arrival at the Silver Spring, Maryland, police station at about 4:15 p. m. the local officer conducted Officers Boyd and Alexander and the defendant to a room upstairs, where they were left alone.

The officers questioned him for about ten minutes. In the course of the questioning the defendant identified the address book as his own, but denied any connection with the death of the deceased. He then asked what would happen to him if he admitted his guilt. He was informed that he would be arrested and that what he said would be used against

him. He then admitted that he grabbed the woman. The officers informed him that he was then under arrest and that anything he said thereafter would be used against him. According to Officer Boyd about ten minutes elapsed before the defendant made the initial admission. He then made a detailed oral confession that took about fifteen or twenty minutes more.

The officer testified that until the admission was made there was no probable cause to arrest the defendant. It is conceivable that he might have proved to have been just a witness or a source of information. The moment he made the damaging admission probable cause came into existence.

The defendant gave his version of the interview, which does not differ in any significant detail from that given by Officer Boyd, except that he thought that the first part of the interview lasted fifteen or twenty minutes instead of ten minutes, as the officer testified. The defendant further testified that the officer said to him that it would be easier for him if he told them what had happened. He also was told, so he testified, that he could be sentenced to life imprisonment or possibly to the electric chair. While he was apprised of his right not to answer any questions and not to say anything, as well as of the fact that anything he said might be used against him, he was not advised that he had a right to a lawyer at that time. He admits, however, that he never asked for a lawyer.

The defendant testified that he told the officers that he had a bad headache and that one of them asked him if he wanted an aspirin. Upon receiving an affirmative reply one of the officers gave the defendant two aspirin tablets. There is no claim that any violence was used or any threat exerted. There is even no contention that any discourteous language was used or any forceful tone of voice employed. The conversation on both sides was courteous and calm. No inducement was exerted by the officers. The officers may be said to have conducted themselves in an exemplary fashion.

The Court finds, therefore, that the statement or statements made by the defendant to the officers at the Silver Spring police station were entirely voluntary and the objection based on the ground of alleged involuntariness is hereby overruled.

We now reach the question whether the evidence was rendered inadmissible by the rule enunciated by the Supreme Court in the Mallory case, to which reference has been made. That rule is not based on any question as to whether the damaging statement was voluntary. It is not founded on any fundamental principles of substantial justice. It is merely a sanction or a means of enforcement of Rule 5(a) of the Federal Rules of Criminal Procedure, which requires an officer making an arrest to take the arrested person, without unnecessary delay, before the nearest available commissioner or before any other nearby officer empowered to commit persons charged with offenses against the laws of the United States. The rule of the Mallory case is that if there is such unnecessary delay, then any damaging or incriminating statement made by the prisoner during the period of unnecessary delay is not admissible in evidence against him.

The vital and crucial words are "without unnecessary delay". Those words were used deliberately and intentionally. Rule 5(a) does not require that the person arrested be brought before a magistrate immediately or forthwith. There are casual expressions, even in some legal opinions, to the effect that a person must be brought before a magistrate immediately. This is not the rule promulgated by the Supreme Court, nor is it so construed in the Mallory case. In the Mallory case, 354 U.S. 449, at page 455, 77 S.Ct. 1356, it is stated that the duty enjoined upon arresting officers to arraign without unnecessary delay indicates that the command does not call for mechanical or automatic obedience.

The Supreme Court has not had occasion, or perhaps an opportunity, to pass upon the question as to what constitutes unnecessary delay. It did rule, however,

in United States v. Mitchell, 322 U.S. 65, page 69, 64 S.Ct. 896, 88 L.Ed. 1140, that if the defendant within a few minutes of his arrival at the police station makes admissions, such admissions may be introduced in evidence, as the few minutes' interval did not constitute an illegal detention or an unnecessary delay. The Supreme Court has never overruled the Mitchell case or in any way distinguished or limited it in any subsequent decision. It seems to the Court that the Mitchell case in and of itself is sufficient to lead to the conclusion that the defendant's statements in this case are admissible.

In the interest of clarity, however, it is desirable to say something about the state of the decisions in the various circuits on the question as to what constitutes unnecessary delay. There are numerous decisions on this point in the District of Columbia Circuit, because in the District of Columbia common law felonies are prosecuted in the Federal court. The decisions are inconsistent with each other, depending very largely, I venture to say, on the composition of the panels of judges that decided the various cases. It would not do to say that the latest case must prevail because in the District of Columbia Circuit there are nine circuit judges sitting in panels of three members. It is understood to be the practice in this circuit that one panel may not overrule a prior decision of another panel, but that such overruling may be had only by the entire Court sitting *en banc*.

In Lockley v. United States, 106 U.S. App.D.C. 163, 270 F.2d 915, the defendant was arrested at 4:30 a. m. and made an oral confession within fifteen minutes after arrest. He was brought to the police station at about 6:30 a. m. and at 9:10 a. m. an officer began typing a confession, which the defendant signed after it was completed. The Court held that both the oral and the written confessions were admissible. It is important to observe that Mr. Justice Burton, a retired Justice of the Supreme Court, was a member of the panel that decided that case.

In Porter v. United States, 103 U.S. App.D.C. 385, 258 F.2d 685, in which Mr. Justice Reed, a retired Associate Justice of the Supreme Court, participated and in which he wrote the opinion, the defendant was arrested at 10:30 p. m. A written statement was taken from him on the same evening at the police station. The transcription was not finished until 11:15 p. m. The statement was held admissible as against the objection that it was barred by the rule cf the Mallory case.

The case in the District of Columbia Circuit that is closest on its facts to the case at bar is Metoyer v. United States, 102 U.S.App.D.C. 62, 250 F.2d 30. That case also involved a charge of murder. The homicide had taken place in the District of Columbia, but the defendant was arrested in Maryland by the Maryland police. He was held by the Maryland police for an hour, until the arrival of representatives of the Washington, D. C. Police Department. Upon their arrival he was questioned and made damaging admissions. A written statement was then prepared, which was signed over two hours after the defendant's arrest. It was held that the statement was admissible in evidence at the trial.

The only case in the District of Columbia Circuit deciding this precise point by the entire Court of Appeals sitting *en banc*, of which this Court is aware, is Trilling v. United States, 104 U.S.App. D.C. 159, 260 F.2d 677. In that case the majority of the Court held that a statement made by the defendant under the following circumstances was admissible in evidence at the trial. The defendant was arrested at his home about 5:30 a. m. An officer with whom he was personally acquainted interviewed him about 8:15 a. m. the same morning. At that time the defendant made certain damaging admissions. The Court held that these statements were admissible in evidence.

It has already been indicated that not only were the decisions of this Circuit not in unison on this point, but that there are differences of opinion as between the Circuits. Perhaps the Circuit that places the broadest interpretation on the phrase "unnecessary delay" is the Second Circuit. In United States v. Ladson, 294 F.2d 535, the defendant was arrested about seven o'clock in the evening and was taken to the office of the Bureau of Narcotics, where he was questioned. He made incriminating admissions during the interview. He was then placed in the Federal House of Detention overnight. On the following morning he was taken to the office of an Assistant United States Attorney, where he was questioned for about an hour and made a written statement. It was only after that interview that he was brought before a commissioner. Both the original oral statement and the written statement made to the Assistant United States Attorney on the following morning were held admissible, in an opinion written by Chief Judge Lumbard. In the course of his opinion, Judge Lumbard stated:

"A delay of an hour or more for the purpose of reducing oral admissions to writing clearly does not violate Rule 5(a)."

The Court is not unmindful of the recent decision of the Court of Appeals for the District of Columbia Circuit in Alston v. United States, 119 U.S.App.D.C. ——, 348 F.2d 72, handed down on May 6th of this year, in which it was held that a confession made after an interrogation that lasted about five minutes was inadmissible. One of the two opinions refers to the decision of the Supreme Court in the Mitchell case, but seems to limit it to a situation where the damaging statements are made spontaneously.

It is clear that the rule in this Circuit is uncertain. I called attention to two early decisions, early in the sense that they came soon after the decision in the Mallory case, under which the statement involved in this case would be admissible. There are later cases, including the Alston case, which would lead to the opposite conclusion. The only decision en banc is the decision in the Trilling case, under which the statement is clearly admissible.

The Court might observe that it has urged the United States Attorney on several occasions to endeavor to take a case to the Supreme Court on a writ of certiorari, in order that the question as to what constitutes unnecessary delay might be clarified. In fact, this Court has repeated that suggestion emphatically recently in connection with the Alston case. Naturally, since the office of the United States Attorney is part of the Executive branch of the Government, the courts have no supervisory power over it, but the Court deems it unfortunate that this question has not been taken to the Supreme Court. The Court hopes it will be. There is still time to do so in the Alston case, and until that time expires the Court is not in a position to deem it binding or controlling, for that reason as well as for the other reasons that have been mentioned. It is not inconceivable that the Supreme Court might agree wiith the broader interpretation placed by the Second Circuit on the Mallory rule. In any event, some clarification is needed.

■ In the light of the decisions to which I have referred and on principle, as well as on authority, I hold that there was no unnecessary delay in this case, and that therefore the statements made to the police are admissible.

This leaves the question of admissibility of certain articles obtained as a result of a search of the premises in which the defendant lived, this search having been conducted pursuant to a search warrant. The evidence at this preliminary hearing shows that after Officer Boyd and Officer Alexander received the defendant's oral admissions they telephoned to Office Wallace at Police Headquarters, gave him

184

the information and, at their direction, he prepared an affidavit on the basis of which the search warrant was issued. In that affidavit Officer Wallace stated, in effect, that a notebook was recovered at the scene which was the property of William H. Fuller, that William H. Fuller was interviewed at his place of employment in Linden, Maryland, when he admitted the murder, that he related that at the time of the murder he was wearing a pair of dark brown trousers, red shirt, a pair of men's shorts, and reddish-brown patent leather shoes, and that he stated that these articles were now at his home, 615 Kiefer Place, Washington, D. C. On the basis of this affidavit the search warrant was issued and was properly executed, and the articles found and seized.

 · It is claimed in behalf of the defendant, however, that the warrant should be vacated on the ground that the information contained in the affidavit was obtained in violation of the rule of the Mallory case. There are two reasons why this objection must be overruled. First, the Court has just held that the statements were not obtained in violation of the Mallory rule. Second, even if there had been a violation of the rule of the Mallory case and of Rule 5(a) of the Federal Rules of Criminal Procedure, rendering the defendant's statements inadmissible at his trial, it does not follow that that information may not be used for the purpose of obtaining a search warrant or for other purposes in connection with the investigation of the case. A violation of the rule of the Mallory case merely bars admission in evidence of the incriminating statements themselves at the defendant's trial.

Accordingly, the Court is overruling the objections to the admissibility of the oral statements, and will overrule any objection to the admissibility of the articles seized under the search warrant, if the objections are based on the grounds heretofore stated.