WADE IGLEHART JOHNSON *v.* STATE OF MARYLAND

[No. 70, September Term, 1977.]

*Decided April 6, 1978.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, LEVINE, ELDRIDGE, ORTH and COLE, JJ.

*Charles M. Carlson* for appellant.

*Stephen B. Caplis, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

LEVINE, J., delivered the opinion of the Court. MURPHY, C. J., and SMITH and ORTH, JJ., dissent. ORTH, J., filed a

dissenting opinion in which MURPHY, C. J., and SMITH, J., join at page 333 *infra*. MURPHY, C. J., filed a dissenting opinion in which SMITH and ORTH, JJ., join at page 342 *infra*.

We granted certiorari in this case to determine whether voluntary incriminatory statements, given after a valid waiver of *Miranda* rights, are nevertheless inadmissible against an accused in a criminal prosecution, when such statements were obtained by police following an "unnecessary delay" in producing the accused before a judicial officer in violation of former Maryland District Rule 709 a.[1] After a jury trial in the Circuit Court for Carroll County, appellant was convicted on charges of armed robbery, assault with intent to murder, larceny, conspiracy and unlawful use of a handgun in connection with two holdups which took place in Annapolis, Maryland during the month of January 1975.[2] An appeal was taken to the Court of Special Appeals which affirmed appellant's conviction. 36 Md. App. 162, 373 A. 2d 300 (1977). Because we have concluded that the trial court erroneously admitted certain inculpatory statements of the appellant, we shall reverse and remand for a new trial.

I

The chronology of events which led to this appeal began on January 13, 1975, when a young black male matching appellant's description walked into the Rainbow Cleaners on West Street in Annapolis, pulled out a pistol and commanded Robin Woolford, a part-time counter clerk, to fill a brown paper bag with money from the cash register. After having instructed Woolford to lie down on the floor, the assailant shot him in the shoulder and then fled; Woolford was seriously wounded.

---

1. Effective July 1, 1977, Chapter 700 of the Maryland District Rules underwent extensive revision. Only slight changes, however, were made in the language of former M.D.R. 709 a which has now been redesignated M.D.R. 723 a. For the sake of clarity, all references to the Maryland District Rules in this opinion are to the version currently in effect, unless otherwise indicated.

2. An Anne Arundel County grand jury handed down three separate indictments against appellant who then obtained removal of the cases to Carroll County. All three cases were subsequently consolidated at the State's request and tried together.

Later that month, on the evening of January 24, 1975, appellant allegedly drove two men, John Leonard and Charles Wilson, to the Acme Supermarket on Solomons Island Road in Annapolis. While appellant waited outside in his automobile, Leonard and Wilson entered the market, robbed Pam Simkunas, an employee, and in the process of escaping, shot Donald Dunbar, the store manager, just grazing his shoulder. Appellant then sped away carrying his co-defendants with him.

Warrants for appellant's arrest were secured by police on January 25, 1975. Unable to locate appellant, members of the Annapolis City Police Department contacted his family for the purpose of having them persuade appellant to surrender himself voluntarily. This effort proved successful and on January 30, 1975, at 3:15 p.m., appellant turned himself in to the police. Upon his arrival at the police station, appellant was immediately taken into custody and processed (fingerprinted and photographed). No arrest warrants were served on appellant, although the record reveals that appellant was informed orally that he was under arrest "for the investigation of armed robbery" at the Acme Supermarket. Police did not at this time attempt to take appellant to a commissioner for an initial appearance.

At approximately 3:20 p.m. appellant, after receiving his first set of *Miranda* warnings, waived his rights by initialing a standardized police form. He was then taken to an interrogation room by Officers Selman Wallace and Thomas Brown for questioning. No sooner had the interrogation commenced than appellant began to complain of stomach pains. Officers Wallace and Brown, observing the suspect's glassy eyes, unusually moist lips and deteriorating physical appearance, broke off the investigation and offered to take appellant to the hospital. For some reason appellant changed his mind and asked permission to rest. He was then taken to a stripped-down cell in the station house lockup where he spent the remainder of the day and night.

Interrogation resumed at 9:45 a.m. on the next day, January 31, after appellant's condition had improved to some extent. Once again Officers Wallace and Brown conducted the

investigation, prefacing the interrogation with a recitation of the *Miranda* warnings. Appellant executed a written waiver and agreed to submit to questioning. This session lasted some six hours, culminating in a ten-page statement in which appellant all but confessed to his complicity in the Acme robbery. It appears that the statement was not actually signed until 3:45 p.m. on the 31st. There is no substantial evidence that this statement was coerced or elicited by deception on the part of the police.

At approximately 4:00 p.m. on the 31st, shortly after making his first statement, appellant was taken before a commissioner for the first time. At this point appellant had been in police custody for over 24 hours. It is undisputed that a commissioner had been available at all times and that his office was but a short distance from the station house. When asked at trial why appellant, after his arrest, had not been presented promptly before a commissioner, Officer Wallace replied:

> "A. Because he hadn't been interrogated then, sir, and we were still investigating the case.
>
> "Q. In other words you wanted to keep him at the Annapolis Police Department, in a detention cell there, until you had such time and opportunity to interrogate him, is that correct?
>
> "A. And not only that, Anne Arundel County Detention Center will not admit or take anybody that is sick.
>
>                     \* \* \*
>
> "Q. And you felt that [appellant] was sick enough then and if you took him to the Commissioner ... they wouldn't accept him?
>
> "A. That is their policy, sir."

Returning from his appearance before the commissioner, appellant was read the *Miranda* warnings for a third and final time. As he had done on the two prior occasions, appellant consented to questioning and at 6:55 p.m. confessed outright

to the January 13th robbery and shooting at Rainbow Cleaners.

At a pretrial hearing on August 26, 1975, appellant sought to suppress the statements made to police on January 31st, arguing that they were obtained in contravention of former District Rules 706 and 709 a. Alternatively, appellant contended that the confessions were tainted by the illegal delay in presentment before a judicial officer and therefore inadmissible on the authority of *Brown v. Illinois,* 422 U. S. 590, 95 S. Ct. 2254, 45 L.Ed.2d 416 (1975).[3] Rejecting these theories, the trial court overruled appellant's objections and admitted the statements.

## II

Long before the adoption of the Maryland District Rules, this Court had held that police officers were under a common law duty "to convey the prisoner in a reasonable time and without unnecessary delay before a magistrate." *Kirk & Son v. Garrett,* 84 Md. 383, 407, 35 A. 1089 (1896); *Twilley v. Perkins,* 77 Md. 252, 265, 26 A. 286, 19 L.R.A. 632 (1893). *See also Blackburn v. Copinger,* 300 F. Supp. 1127, 1140 (D. Md. 1969), *aff'd per curiam,* 421 F. 2d 602 (4th Cir.), *cert. denied,* 399 U. S. 910 (1970); Kauffman, *The Law of Arrest in Maryland,* 5 Md. L. Rev. 125, 130-31 (1941). Invoked primarily in the context of civil actions for false imprisonment, this doctrine portended the enactment of legislation guaranteeing detainees the right to prompt presentment in Baltimore City and Montgomery County.[4]

3. Former M.D.R. 706 d required an arresting officer to give an accused a copy of the arrest warrant "promptly after his arrest." (*See* present M.D.R. 720 g requiring service of warrant and charging document on defendant "as soon as possible" after arrest.) Since, for reasons to be stated elsewhere, we have concluded that appellant's statements were inadmissible by reason of M.D.R. 723 a, we have no occasion to decide whether such statements were also excludible under former M.D.R. 706 d or Brown v. Illinois, 422 U. S. 590, 95 S. Ct. 2254, 45 L.Ed.2d 416 (1975).

4. *See, e.g.,* Maryland Code (1957, 1968 Repl. Vol., 1971 Cum. Supp.) Art. 52, § 97 (h) (Montgomery County) (repealed 1972), discussed in Jackson v. State, 8 Md. App. 260, 267-69, 259 A. 2d 587 (1969); Code (1957, 1966 Repl. Vol.) Art. 26, § 115 (Baltimore City) (repealed 1972), discussed in Taylor v. State, 238 Md. 424, 431-32, 209 A. 2d 595 (1965); Code of Pub. Loc. L. (1938) Art. 4, §§ 742 and 916 (Baltimore City) (repealed 1961), discussed in Grear v. State, 194 Md. 335, 348-49, 71 A. 2d 24 (1950) and Cox v. State, 192 Md. 525, 534-36, 64 A. 2d 732 (1949).

It was not until July 1971, however, with the adoption of the predecessor to M.D.R. 723 a by this Court that the right to speedy production before a judicial officer was secured to defendants on a uniform statewide basis. As originally drafted, M.D.R. 723 a closely paralleled Rule 5(a) of the Federal Rules of Criminal Procedure, requiring the presentment of an accused before a judicial officer "without unnecessary delay." *See also* Uniform Rule of Criminal Procedure 311. In response to comments from state and local law enforcement officials, however, the proposed rule was modified to incorporate a presumption of illegality, which applies whenever an arrestee is detained by police beyond 24 hours or the first session of court following arrest without having been taken to a judicial officer. *See* 2 G. Liebmann, *Maryland District Court Law and Practice* § 941, at 142 (1976). Presumably, where the delay is less than the prescribed maximum, the rule anticipates that a determination as to the necessity and reasonableness of the delay will be made by courts on a case-by-case basis. No provision is made for the imposition of sanctions against police who violate the rule.

### III

The State, echoing the reasoning of the Court of Special Appeals, *Johnson v. State,* 36 Md. App. at 172, contends that the provisions of M.D.R. 723 a are directory only — being mere guidelines for the disposition of criminal defendants upon arrest. In its entirety Maryland District Rule 723 a provides:

> "A defendant who is detained pursuant to an arrest shall be taken before a judicial officer without unnecessary delay and in no event later than the earlier of (1) 24 hours after arrest or (2) the first session of court after the defendant's arrest upon a warrant or, where an arrest has been made without a warrant, the first session of court after the charging document is filed. A charging document shall be filed promptly after arrest if not already filed."

That M.D.R. 723 a was intended to be mandatory is evidenced in the first instance by the express terms of the rule itself. The rule declares in unequivocal language that a "defendant *shall* be taken . . . without unnecessary delay" to a judicial officer following arrest. (emphasis added). We have stated on numerous occasions that in the absence of a contrary contextual indication, the use of the word "shall" is presumed to have a mandatory meaning, *Moss v. Director,* 279 Md. 561, 564-65, 369 A. 2d 1011 (1977), and thus denotes an imperative obligation inconsistent with the exercise of discretion. *Bright v. Unsat. C. & J. Fund Bd.,* 275 Md. 165, 169, 338 A. 2d 248 (1975).

But we need not rely exclusively on principles of statutory construction to justify our conclusion that M.D.R. 723 a lays down a compulsory rule for police conduct. In interpreting the rules of criminal procedure, our practice has been to avoid semantic nicety and to adopt that interpretation which will best implement the policies underlying the particular rule. *Johnson v. State,* 274 Md. 29, 41, 333 A. 2d 37 (1975); *Brown v. State,* 237 Md. 492, 504, 207 A. 2d 103 (1965).

The principle of prompt presentment embodied in M.D.R. 723 a has been described as a *sine qua non* in any scheme of civil liberties. Hogan & Snee, *The McNabb-Mallory Rule: Its Rise, Rationale and Rescue,* 47 Geo. L.J. 1, 27 (1958). In Maryland, as elsewhere, the purpose of the rule is to insure that an accused will be promptly afforded the full panoply of safeguards provided at the initial appearance.

To comprehend fully the central importance of the prompt presentment requirement, it is first necessary to examine briefly the role played by the initial appearance in our system of justice. The procedural components of the initial appearance are set forth in M.D.R. 723 b. Chief among these protections is the constitutionally compelled requirement of M.D.R. 723 b 4 that all persons arrested without a warrant be afforded a prompt hearing at which a neutral judicial officer must determine whether sufficient probable cause exists for the continued detention of the defendant. *See Gerstein v. Pugh,* 420 U. S. 103, 114, 95 S. Ct. 854, 43 L.Ed.2d 54 (1975); *and see* Note, 5 U.Balt.L.Rev. 322 (1976). Of equal

importance is the provision of M.D.R. 723 b 3 obligating a commissioner at the initial appearance to make a determination of the defendant's eligibility for pretrial release under M.D.R. 721.

A third function of the initial appearance is to inform the accused of every charge brought against him and to inform him of his right to counsel, and, if indigent, to have counsel appointed for him. M.D.R. 723 b 1; M.D.R. 723 b 2; M.D.R. 711 a. Further, where the defendant has been charged with a felony over which the District Court lacks subject matter jurisdiction, the commissioner conducting the initial appearance must notify the accused of his right under M.D.R. 727 to request a full preliminary hearing. Code (1957, 1976 Repl. Vol.) Art. 27, § 592; M.D.R. 723 b 5. If such a request is forthcoming, the commissioner must assign a date and time for the preliminary hearing. M.D.R. 723 b 6. Finally, where the crime is one within the District Court's jurisdiction, the presiding judicial officer must fix the date for trial. *Id.*

The procedural requirements of M.D.R. 723 b bolster in substantial fashion several fundamental constitutional guarantees, including the right of a defendant to be informed of the accusation against him, Maryland Declaration of Rights, Art. 21; the right to be free from unauthorized and unreasonable seizures of his person, U.S. Const., amends. IV and XIV; *Gerstein v. Pugh,* 420 U. S. at 114; the right to be allowed counsel, Declaration of Rights, Art. 21, and to have counsel appointed for him if indigent, U.S. Const., amends. VI and XIV; *Gideon v. Wainwright,* 372 U. S. 335, 344-45, 83 S. Ct. 792, 9 L.Ed.2d 799 (1963), as well as the due process right to be free from coercive investigatory methods. *Brown v. Mississippi,* 297 U. S. 278, 286, 56 S. Ct. 461, 80 L.Ed. 682 (1936).

Significantly, only one state in the union has construed its prompt presentment statute to be merely directory. *Wilson v. State,* 258 Ark. 110, 522 S.W.2d 413, 414, *cert. denied,* 423 U. S. 1017 (1975). We decline to follow this view. To hold, as the State urges, that compliance with the prompt presentment requirement of M.D.R. 723 a is purely discretionary with the police, would, in our opinion, be to

erode severely the system of procedural guarantees designed to insure fair treatment of criminal defendants from the time of arrest to the time of trial. Prompt presentment after arrest assures impartial judicial supervision of the defendant's rights at the earliest possible stage of detention. Accordingly, we hold that the prompt presentment requirement of M.D.R. 723 a is mandatory and was therefore binding on the police in the instant case.

## IV

We now determine what effect the violation of Rule 723 a should have on the admissibility of evidence obtained during the period of unnecessary delay. Appellant urges us to fashion a per se exclusionary rule similar to that enunciated by the Supreme Court in *Mallory v. United States,* 354 U. S. 449, 77 S. Ct. 1356, 1 L.Ed.2d 1479 (1957), *Upshaw v. United States,* 335 U. S. 410, 69 S. Ct. 170, 93 L.Ed. 100 (1948), and *McNabb v. United States,* 318 U. S. 332, 63 S. Ct. 608, 87 L.Ed. 819 (1943). According to the so-called *McNabb-Mallory* rule, any statement obtained from an arrestee during a period of unnecessary delay in producing him before a magistrate in contravention of Federal Criminal Rule 5(a) is inadmissible at trial, irrespective of whether it was given voluntarily or not. *Upshaw v. United States,* 335 U. S. at 413. *See generally* 1 C. Wright, *Federal Practice and Procedure (Criminal)* §§ 72-75 (1969).

The Supreme Court has itself acknowledged that the *McNabb-Mallory* rule is not derived from the Constitution, but rather is the product of the exercise of the Court's supervisory authority over the administration of criminal justice in the federal courts. *McNabb v. United States,* 318 U. S. at 341. *But see Williams v. State,* 264 Ind. 664, 348 N.E.2d 623, 629 (1976); C. McCormick, *Handbook of the Law of Evidence* § 155, at 340 (2d ed. 1972). Consequently, the rule is not binding on the states. *Culombe v. Connecticut,* 367 U. S. 568, 600-601, 81 S. Ct. 1860, 6 L.Ed.2d 1037 (1961); *Cox v. State,* 192 Md. 525, 536, 64 A. 2d 732 (1949).

Critics of *McNabb-Mallory* argue that while some incentive should be given law enforcement officials to obey the prompt

production requirement, the exclusion of confessions, statements and other evidence obtained in derogation of the rule, "is too high a price for society to pay for this type of 'constable's blunder.'" Omnibus Crime Control and Safe Streets Act of 1968, S. Rep. No. 1097, 90th Cong., 2d Sess. 38, *reprinted in* [1968] U.S. Code Cong. & Ad. News 2112, 2124. *See also Hendrickson v. State,* 93 Okla. Crim. 379, 229 P. 2d 196, 211 (1951); *State v. Gardner,* 119 Utah 579, 230 P. 2d 559, 563-64 (1951). They argue that the rule results in the release of criminals whose guilt is virtually beyond question and causes undue complications in the conduct of criminal trials. S. Rep. No. 1097, 90th Cong., 2d Sess. 40, *reprinted in* [1968] U.S. Code Cong. & Ad. News 2112, 2125-26. *See United States v. Ceccolini,* U. S., 98 S. Ct. 1054, 1061, 55 L.Ed.2d 268 (1978).

Not surprisingly, then, the vast majority of state courts passing on the question have rejected *McNabb-Mallory* outright, opting instead for a traditional due process voluntariness test of the admissibility of confessions.[5] According to this view, a statement extracted from an arrestee in violation of his right to prompt presentment is not ipso facto inadmissible. *Rogers v. Superior Court of Alameda County,* 46 Cal. 2d 3, 291 P. 2d 929, 933 (1955). Rather the delay is considered a relevant factor in evaluating the overall voluntariness of the confession. *People v. Carbonaro,* 21 N.Y.2d 271, 287 N.Y.S.2d 385, 234 N.E.2d 433, 436 (1968). A statement is deemed voluntary if, when examined in light of the totality of circumstances surrounding its utterance, it has

---

5. *See, e.g.,* People v. Haydel, 12 Cal. 3d 190, 115 Cal. Rptr. 394, 524 P. 2d 866, 870 (1974); State v. Wyman, 97 Idaho 486, 547 P. 2d 531, 536 (1976); State v. Hansen, 225 N.W.2d 343, 350 (Iowa 1975); State v. Jones, 53 N. J. 568, 252 A. 2d 37, 39-41, *cert. denied,* 395 U. S. 970 (1969); People v. Carbonaro, 21 N.Y.2d 271, 287 N.Y.S.2d 385, 234 N.E.2d 433, 436 (1968); State v. Shipley, 232 Or. 354, 375 P. 2d 237, 240 (1962), *cert. denied,* 374 U. S. 811 (1963); State v. Hoffman, 64 Wash. 2d 445, 392 P. 2d 237, 240 (1964); *and see* cases collected in Annot., 19 A.L.R.2d 1331 (1951).

Even the federal courts, spurred on by the enactment of Title II of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 3501 (1970), which purported to overrule *McNabb-Mallory* with respect to delays lasting less than six hours, have all but jettisoned the per se exclusionary rule in favor of a voluntariness standard in all cases including those where the delay in presentment exceeds six hours. *See, e.g.,* United States v. Gaines, 555 F. 2d 618, 623 (7th Cir. 1977).

not been "extracted by any sort of threats or violence, nor obtained by any direct or implied promises, . . . nor by the exertion of any improper influence." *Malloy v. Hogan,* 378 U. S. 1, 7, 84 S. Ct. 1489, 12 L.Ed.2d 653 (1964); *and see State v. Kidd,* 281 Md. 32, 35-36, 375 A. 2d 1105, *cert. denied,* 98 S. Ct. 646 (1977).

The State exhorts us to join the majority and apply a voluntariness standard to statements obtained in violation of M.D.R. 723 a. We decline to do so. To say that an unlawful postponement of the initial appearance may be merely a factor in assessing the admissibility of a statement, is to imply that an unnecessary delay may be overlooked entirely if other indicia of voluntariness exist. Under this analysis, even a gross violation of the presentment requirement can be disregarded altogether. *See, e.g., Reeves v. Commonwealth,* 462 S.W.2d 926 (Ky.), *cert. denied,* 404 U. S. 836 (1971) (4-day delay in presentment did not affect admissibility); *State v. Williams,* 369 S.W.2d 408 (Mo. 1963) (10-day delay). Despite its relatively popular acceptance, therefore, the voluntariness standard is a hopelessly inadequate means of safeguarding a defendant's right of prompt presentment.

Voicing their disenchantment with the voluntariness standard, several states have elected in recent years to adopt a per se exclusionary rule in order to combat what many perceive to be an increase in the number of flagrant violations of the prompt production requirement. *Webster v. State,* 59 Del. 54, 213 A. 2d 298, 301 (1965); *Vorhauer v. State,* 59 Del. 35, 212 A. 2d 886, 892 (1965); *Larkin v. United States,* 144 A. 2d 100, 103 (D.C. App. 1958); *Oliver v. State,* 250 So. 2d 888, 889 (Fla. 1971); *(but see State v. Roberts,* 274 So. 2d 262, 264 (Fla. App.), *rev'd on other grounds,* 285 So. 2d 385 (Fla. 1973)); *State v. Benbo,* Mont., 570 P. 2d 894, 900 (1977); *Commonwealth v. Davenport,* 370 A. 2d 301, 306-307 (Pa. 1977). *See State v. Vollhardt,* 157 Conn. 25, 244 A. 2d 601, 607 (1968) (construing statutory codification of *Mallory* rule); *and see People v. Williams,* 68 Cal. App.3d 36, 137 Cal. Rptr. 70, 75 (1977) (adopting per se rule with respect to line-up identification evidence, but retaining voluntariness standard for confessions).

These courts recognize, despite sharp criticism from some quarters, *see, e.g., Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U. S. 388, 416, 91 S. Ct. 1999, 29 L.Ed.2d 619 (1971) (Burger, C. J., dissenting), that the exclusionary rule is perhaps the most effective and practical means of curbing lawless police conduct when it impinges upon fundamental legal and constitutional rights of a criminal defendant. *Vorhauer v. State,* 212 A. 2d at 893; *People v. Carbonaro,* 234 N.E.2d at 438 (Fuld, C. J., dissenting); *see Brown v. Illinois,* 422 U. S. at 599-600. The theory behind the rule is that by refusing to admit evidence obtained as a result of illegal conduct, courts will "instill in . . . particular investigating officers, or in their future counterparts, a greater degree of care toward the rights of an accused." *Michigan v. Tucker,* 417 U. S. 433, 447, 94 S. Ct. 2357, 41 L.Ed.2d 182 (1974). There is reason to believe that the exclusionary rule is an especially effective deterrent when invoked with respect to in-custody interrogations, since police activity at this stage in the investigation is likely to be aimed at procuring evidence for use at trial. Model Code of Pre-Arraignment Procedure § 150.3, Commentary, at 397 (1975). *See* Oaks, *Studying the Exclusionary Rule in Search and Seizure,* 37 U. Chi. L. Rev. 665, 722 (1970).

While deterrence of future police misconduct is the primary function of the exclusionary rule, *United States v. Janis,* 428 U. S. 433, 446, 96 S. Ct. 3021, 49 L.Ed.2d 1046 (1976); Note, 62 Cornell L. Rev. 364, 372 (1977), the suppression of illegally obtained evidence is also said to prevent the debasement of the judicial process by insuring that courts do not become "accomplices in willful disobedience of law." *McNabb v. United States,* 318 U. S. at 345; *Olmstead v. United States,* 277 U. S. 438, 483, 485, 48 S. Ct. 564, 72 L.Ed. 944 (1928) (Brandeis, J., dissenting). *See* Comment, *Judicial Integrity and Judicial Review: An Argument for Expanding the Scope of the Exclusionary Rule,* 20 U.C.L.A. L. Rev. 1129, 1163-64 (1973). *But cf. Stone v. Powell,* 428 U. S. 465, 485, 96 S. Ct. 3037, 49 L.Ed.2d 1067 (1976) ("While courts . . . must ever be concerned with preserving the integrity of the judicial process, this concern has limited force as a justification for the exclusion of highly probative evidence").

Arguing that an exclusionary rule would sweep too broadly, the State urges our adoption of two more tempered variations of the per se rule. Under the State's first variant, a confession or statement would be suppressed only if the defendant could demonstrate that he was unfairly prejudiced by reason of police failure to obey the prompt presentment rule. *People v. Hosier,* 186 Colo. 116, 525 P. 2d 1161, 1164 (1974); *State v. Johnson,* 222 Kan. 465, 565 P. 2d 993, 1000-1001 (1977). Prejudice is said to exist when the purpose of the delay was solely to extract, "squeeze out" or "sew up" a confession or culpable statement to assure a finding of guilt. *People v. White,* 392 Mich. 404, 221 N.W.2d 357, 366 (1974), *cert. denied,* 420 U. S. 912 (1975); *Briggs v. State,* 76 Wis. 2d 313, 251 N.W.2d 12, 17 (1977); *Raigosa v. State,* 562 P. 2d 1009, 1015 (Wyo. 1977).

This approach, in our view, is merely a reformulation of the voluntariness test. Furthermore, the prejudice test would encumber the defendant with the well-nigh insurmountable burden of showing that detention was deliberately prolonged in order to extract a confession. In our view a defendant suffers prejudice whenever a statement procured during an illegal delay is used against him at trial or leads directly to other evidence ultimately employed to convict him. *Commonwealth v. Futch,* 447 Pa. 389, 290 A. 2d 417, 419 (1972). *Accord, State v. Benbo,* 570 P. 2d at 900.

The State's second alternative would be to apply the exclusionary rule only where the police have committed a *substantial violation* of the prompt presentment rule. This approach is similar to a proposal recently propounded by the American Law Institute in its Model Code of Pre-Arraignment Procedure § 150.3 (1975). Under the Model Code, statements may be suppressed only if the violation of the prompt presentment provision 1) was gross, wilful and prejudicial to the accused; or 2) was of a kind likely to mislead the accused as to his legal rights or to have influenced the defendant's decision to make the statement; or 3) created a significant risk of untrustworthiness. While the ALI scheme does offer more in the way of protection than the traditional voluntariness standard, we believe that, as currently

formulated, the "substantiality test" might conceivably encourage evasion of the requirements of M.D.R. 723 a, rather than deter such conduct. Moreover, adoption of an ALI-type test would significantly and unnecessarily complicate and confuse admissibility determinations by requiring trial courts to apply criteria which are themselves not susceptible of precise definition.

In our opinion the protection of the right of an accused to prompt production before a judicial officer following arrest will be most effectively accomplished by a per se exclusionary rule. Not only is such a rule calculated to deter unlawful detentions and to preserve the integrity of the criminal justice system, but it is likely to assure more certain and even-handed application of the prompt presentment requirement and will provide to trial courts, the bar and law enforcement officials greater guidance as to the permissible limits of custodial interrogation prior to an initial appearance. *Commonwealth v. Davenport,* 370 A. 2d at 306.

Conceivably, application of this rule may in rare instances culminate in the release of potentially guilty defendants; nevertheless, on balance the rights secured directly or indirectly by M.D.R. 723 a are too vital to be ignored or compromised in the name of social expediency. Hogan & Snee, *supra,* 47 Geo. L. J. at 23.

> "The prohibition ... against any unnecessary delay between an arrest by an accusatorial authority and a preliminary arraignment minimizes the possibility of any unnecessary abridgement of a citizen's liberty. Such an abridgement would, of course, be unconstitutional. The danger of any such unnecessary and unconstitutional restriction of liberty diminishes significantly when a citizen is brought swiftly before a neutral judicial authority...." *Commonwealth v. Dixon,* 454 Pa. 444, 311 A. 2d 613, 614 (1973).

We therefore hold that any statement, voluntary or otherwise, obtained from an arrestee during a period of unnecessary delay in producing him before a judicial officer,

thereby violating M.D.R. 723 a, is subject to exclusion when offered into evidence against the defendant as part of the prosecution's case-in-chief. A statement is automatically excludible if, at the time it was obtained from the defendant, he had not been produced before a commissioner for his initial appearance within the earlier of 24 hours after arrest or the first session of court following arrest, irrespective of the reason for the delay. Where, however, the delay in presentment falls within the outer limits established by M.D.R. 723 a, it is incumbent upon the trial court to determine whether the State has met its burden of showing that the delay was necessary under the circumstances of the particular case. Examples of necessary delay might include those required: 1) to carry out reasonable routine administrative procedures such as recording, fingerprinting and photographing; 2) to determine whether a charging document should be issued accusing the arrestee of a crime; 3) to verify the commission of the crimes specified in the charging document; 4) to obtain information likely to be a significant aid in averting harm to persons or loss to property of substantial value; 5) to obtain relevant nontestimonial information likely to be significant in discovering the identity or location of other persons who may have been associated with the arrestee in the commission of the offense for which he was apprehended, or in preventing the loss, alteration or destruction of evidence relating to such crime. *Mallory v. United States,* 354 U. S. at 454-55; Uniform Rule of Criminal Procedure 311; Model Code of Pre-Arraignment Procedure § 130.2(2)(b) (1975).

We note also that a truly spontaneous "threshhold" confession or statement uttered at the time of arrest or shortly thereafter would not be excludible on the grounds that police *subsequently* failed to act diligently in complying with M.D.R. 723 a. In such cases there is manifestly no connection between the delay and the statement, and since police misconduct does not in any way contribute to the making of the confession, the exclusionary rule would logically not apply. *United States v. Mitchell,* 322 U. S. 65, 70, 64 S. Ct. 896, 88 L.Ed. 1140 (1944); *United States v. Seohnlein,*

423 F. 2d 1051, 1053 (4th Cir.), *cert. denied,* 399 U. S. 913 (1970); 1 C. Wright, *Federal Practice and Procedure (Criminal)* § 73, at 79-80 (1969).

In the case at hand, police held appellant for just over 24 hours after his arrest, and this despite the availability of a commissioner at all times on January 30 and 31, 1975. What is more, the evidence established that police deliberately postponed presentment of appellant for the purpose of subjecting him to further interrogation. Under our holding announced here, appellant's first inculpatory statement (concerning the Acme Supermarket robbery), signed shortly prior to his initial appearance before a commissioner on the afternoon of the 31st, was inadmissible per se, since it was given during the period of delay in presentment which extended beyond 24 hours and long after the first session of court following the arrest.

Appellant's second statement, admitting responsibility for the Rainbow Cleaners holdup and shooting, which was given almost immediately upon appellant's return from the commissioner on January 31, should likewise have been suppressed. We cannot say, on the record before us, that the second confession was an independent act, occurring after time for deliberate reflection and therefore free from the taint of the preceding illegal detention. In sum, then, unless appellant waived his right to prompt presentment before a judicial officer, both statements implicating him in the crimes of January 13 and 24, should have been excluded from evidence, having been obtained in clear violation of M.D.R. 723 a.

V

The State's final contention is that by thrice waiving his constitutional rights under *Miranda v. Arizona,* 384 U. S. 436, 478-79, 86 S. Ct. 1602, 16 L.Ed.2d 694 (1966), appellant also waived any right he may have had under M.D.R. 723 a to be brought promptly before a judicial officer. The argument posited by the State has won acceptance in at least two federal appellate circuits and the District of Columbia. *Pettyjohn v. United States,* 419 F. 2d 651, 656 (D.C. Cir. 1969),

*cert. denied,* 397 U. S. 1058 (1970); *United States v. Indian Boy X,* 565 F. 2d 585, 591 (9th Cir. 1977); *Matter of F.D.P.,* 352 A. 2d 378, 382 (D.C. App. 1976). *See also People v. Hosier,* 525 P. 2d at 1164; *State v. Roberts,* 274 So. 2d 262, 265 (Fla. App.), *rev'd on other grounds,* 285 So. 2d 385 (Fla. 1973); *Richmond v. State,* 554 P. 2d 1217, 1229 (Wyo. 1976).

Proponents of this view assert that the purpose behind the *McNabb-Mallory* rule, at least in part, is to protect indigent and illiterate defendants against the coercive conditions of custodial interrogation. Thus, it is said, the rule indirectly vindicates an accused's Fifth Amendment privilege against self-incrimination, which is precisely what the Supreme Court sought to protect by means of the prophylactic rule announced in *Miranda. See* 8 J. Moore, *Federal Practice* ¶ 5.02[2], at pp. 5-15 to 5-16 (2d ed. 1977). Therefore, since the *Miranda* warnings provide an accused with the same protection he would receive under *McNabb-Mallory,* it follows that a waiver of one's *Miranda* rights should also operate as a waiver of the right to an immediate *judicial* warning of constitutional rights under *Mallory. Frazier v. United States,* 419 F. 2d 1161, 1167 (D.C. Cir. 1969).

This argument in our opinion is based on a false premise, that *Miranda* and the prompt presentment requirement share a common purpose. The fact of the matter is that *Miranda* was never intended to supplant the *Mallory* rule, as the Supreme Court itself acknowledged in the *Miranda* opinion. *Miranda v. Arizona,* 384 U. S. at 463 n. 32. One jurist has commented that it is unsound to treat *Miranda* and *Mallory* as closely related, since the former is a qualitative test of the circumstances of the interrogation, while the latter focuses on the duration of time delay. *Frazier v. United States,* 419 F. 2d at 1171 (Burger, J., dissenting).

To be sure, one important function of the initial appearance is to advise an arrestee of his right to counsel; to this extent there is a partial overlap with *Miranda.* Even so, it has been convincingly argued that the typically perfunctory reading of *Miranda* warnings by police at the time of arrest may be insufficient to provide the accused with adequate notice of his constitutional rights; and that a need exists for follow-up

advice of the basic right to counsel by a neutral officer of the court, such as is provided by M.D.R. 723 b 2. *Commonwealth v. Tingle,* 451 Pa. 241, 301 A. 2d 701, 703 (1973). Note, 79 Dick. L. Rev. 309, 348 (1975).

But, as we have previously observed, the initial appearance affords a defendant considerably more than a supplementary warning of his right to counsel. Additional protections include the right to be notified of all charges brought by the State, and the right to a hearing on the defendant's eligibility for pretrial release and court-appointed counsel. What is more, defendants arrested without a warrant are entitled to a constitutionally mandated probable cause determination. Such matters lie outside the scope of *Miranda* and are the exclusive responsibility of the judicial officer presiding at the initial appearance.

In light of the dissimilar functions performed by the two rules, we can only conclude that a waiver of *Miranda* rights by an accused does not automatically waive his right to a prompt initial appearance under M.D.R. 723 a. *Accord, United States v. Erving,* 388 F. Supp. 1011, 1020-21 (W.D. Wis. 1975); *State v. Benbo,* 570 P. 2d at 899. Of course, a defendant may specifically waive his right to prompt presentment, provided such waiver is knowingly and intelligently made. *See State v. McKay,* 280 Md. 558, 572-74, 375 A. 2d 228 (1977). Since the record in the present case reveals no indication that appellant ever effectively consented to a deferment of his initial appearance, we hold that his rights under M.D.R. 723 a were not validly waived.

> *Judgment of the Court of Special Appeals reversed; remanded to that court with instructions to reverse the judgment of the Circuit Court for Carroll County and to remand for a new trial.*
> *Costs to be paid by Anne Arundel County.*

*Orth, J., dissenting:*

At the time of the arrest of Wade Iglehart Johnson (appellant), Maryland District Rule 709 a, now M.D.R. 723 a,[1] provided:

"A defendant shall be taken before a conveniently available judicial officer without unnecessary delay and in no event later than the earlier of (1) twenty-four hours after arrest or (2) the first session of court after the defendant's arrest upon a warrant, or, where an arrest has been made without a warrant, the first session of court after the charging of the defendant. Such charging shall take place promptly after arrest."

A majority of this Court holds today:

"[A]ny statement, voluntary or otherwise, obtained from an arrestee during a period of unnecessary delay in producing him before a judicial officer, thereby violating M.D.R. 723 a, is subject to exclusion when offered into evidence against the defendant as part of the prosecution's case-in-chief. A statement is automatically excludible if, at the time it was obtained from the defendant, he had not been produced before a commissioner for his initial appearance within the earlier of 24 hours after arrest or the first session of court following arrest,

---

1. As the majority opinion points out in its note 1, effective 1 July 1977, chapter 700 of the Maryland District Rules underwent extensive revision, but only slight changes were made in former M.D.R. 709 a. It was redesignated as M.D.R. 723 a, and now reads:

"A defendant who is detained pursuant to an arrest shall be taken before a judicial officer without unnecessary delay and in no event later than the earlier of (1) 24 hours after arrest or (2) the first session of court after the defendant's arrest upon a warrant or, where an arrest has been made without a warrant, the first session of court after the charging document is filed. A charging document shall be filed promptly after arrest if not already filed."

The majority opinion noted that for the sake of clarity, all references to the Maryland District Rules are to the version currently in effect, unless otherwise indicated. The same procedure is followed in this dissenting opinion.

> irrespective of the reason for the delay. Where, however, the delay in presentment falls within the outer limits established by M.D.R. 723 a, it is incumbent upon the trial court to determine whether the State has met its burden of showing that the delay was necessary under the circumstances of the particular case."

I am in complete disagreement with this holding.

## I

We have long recognized the common law duty of police officers "to convey the prisoner in a reasonable time and without unnecessary delay, before a magistrate. . . ." *Kirk & Son v. Garrett,* 84 Md. 383, 407, 35 A. 1089 (1896); *Twilley v. Perkins,* 77 Md. 252, 265, 26 A. 286 (1893). We have never held, however, that a violation of the duty, in itself, was sufficient to exclude from evidence any statement, voluntary or otherwise, obtained by the police.

When the Municipal Court of Baltimore City was created in 1961, the legislature provided: "Whenever any person shall be arrested in the City of Baltimore upon any criminal charge ... it shall be the duty of the police officer or constable making such arrest, or in whose custody the person arrested may be, to take such person before a judge of the criminal division of the Municipal Court of Baltimore City. . . ." Code (1957, 1966 Repl. Vol.) Art. 26, § 115 (repealed 1972).[2] We discussed § 115 in *Taylor v. State,* 238 Md. 424, 431-432, 209 A. 2d 595 (1965). We rejected the argument that the statute required that an arrestee be taken before one of the judges of the Municipal Court immediately after his arrest. We observed: "No time limit is set in the Section as to when it is compulsory that an arrested person be taken before one of

---

2. Acts 1961, ch. 616, which enacted the law codified as Art. 26, § 115, of which the above provision was a part, at the same time repealed § 428 of the Charter and Public Local Laws of Baltimore City (1949) as amended by ch. 458, Acts 1951. The former law was in substance the same as § 115 except that the arrestee was to be taken before a justice of the peace. Gerstein v. State, 10 Md. App. 322, 327, 270 A. 2d 331 (1970), *cert. denied,* 260 Md. 720, *cert. denied,* 402 U. S. 1009 (1971).

the judges; and no mention is made to the effect that a failure to take such a person before one of the judges by a specified time shall render a voluntary confession inadmissible. Had the Legislature so intended, it would have been a very simple task to manifest such intention." *Id.* at 432. We held: "[T]he failure to take the [arrestee] before a judge of the Municipal Court prior to his confession did not render them inadmissible." *Id.* at 432. *See Metallo v. State,* 10 Md. App. 76, 79-80, 267 A. 2d 804, *cert. denied,* 259 Md. 734 (1970) in which the Court of Special Appeals pointed out that the statute provided no sanctions for failure to comply with its provisions. The court in *Blackburn v. Copinger,* 300 F. Supp. 1127, 1140-1142 (D. Md. 1969), *aff'd,* 421 F. 2d 602, *cert. denied,* 399 U. S. 910 (1970), declared that the statute clearly did not permit the police to interrogate a suspect against whom they may have no evidence of any legal force for an indeterminate period of time. It said: "If Blackburn were a federal prisoner, the violation by the police of their duty to bring him before a judicial officer would by itself result in the inadmissibility of his confession. This *per se* rule has not been held to apply to criminal prosecutions in state courts. But in assessing whether Blackburn's confession was voluntary, his detention contrary to the explicit law of Maryland is an important factor." *Id.* at 1142.

Code (1957, 1972 Repl. Vol.) Art. 52, § 97 (h) (repealed in 1972), applicable to Montgomery County, provided *inter alia*: "Each arrested person shall be taken before such committing magistrate [3] immediately following arrest without delay." In *Murphy v. State,* 8 Md. App. 430, 260 A. 2d 357 (1970) the Court of Special Appeals, speaking through Chief Judge Murphy, now Chief Judge of this Court, characterized a challenge to a statement obtained in violation of the statute as not one in the constitutional sense, but rather one "through application of a non-constitutional exclusionary rule of evidence similar to that fashioned by the Supreme Court in *Mallory v. United States,* 354 U. S. 449 [, 77 S. Ct.

---

**3.** A committing magistrate under the Section was an employee of the People's Court for Montgomery County appointed by the county executive with the advice and consent of the chief judge of the People's Court for Montgomery County and designated as a committing magistrate.

1356 (1957)], *i.e.,* that the sanction to be applied for failure of the police to immediately bring an arrested person before a committing magistrate . . . was exclusion of any post-arrest statements made from evidence." *Id.* at 436. The intermediate court held that the trial judge properly overruled this ground of objection to the admissibility of the statement. In *Jackson v. State,* 8 Md. App. 260, 269, 259 A. 2d 587 (1969), *cert. denied,* 257 Md. 734 (1970), the Court of Special Appeals said by way of dicta that as the statute failed to provide any sanctions for non-compliance, the intent of the legislature was not to embrace the sanctions applied by the Supreme Court in *Mallory* which were not controlling as to prosecution in the state courts. *See Cox v. State,* 192 Md. 525, 536, 64 A. 2d 732 (1949).

Public Local Laws of Baltimore City formerly made it the duty of a police officer or constable making an arrest or having custody of a person arrested to take the arrestee before a Justice of the Peace. Baltimore City Code of Pub. Loc. L. (1938) Art. 4, § 742. Section 916 of the article required that "[a]ll persons arrested in the daytime under the provisions of this sub-division of this Article shall be taken by the officer making the arrest immediately before the nearest Police Justice for examination, except that all females and male children under fourteen years of age who may be arrested or taken into custody shall be taken before the nearest Police Justice for examination when there shall be matrons at the stationhouse as hereinafter provided." [4] In *Grear v. State,* 194 Md. 335, 71 A. 2d 24 (1950) Grear was arrested in Baltimore City and held, without being taken before a magistrate, although one was available, from nine o'clock Sunday morning until four o'clock Monday afternoon, and a confession was obtained from him while he was so held. Grear contended that he was unlawfully held in violation of the local laws and that his confession was therefore inadmissible. We saw no material difference, in the circumstances, between § 742 and § 916. The Court believed

4. Baltimore City Code of Pub. Loc. L. (1938) Art. 4, § 742 and § 916 appeared in Baltimore City Code Pub. Loc. L. (1949) as Art. 4, § 428 and § 565 respectively. Section 428 was repealed by Acts 1961, ch. 616 and § 565 was repealed by Acts 1966, ch. 203.

that "[o]ne reason, if not the only reason [why Grear was not immediately taken before a magistrate] was the desire to get a confession first." *Id.* at 348. It recognized that "[l]ack of sufficient evidence to hold [an arrestee] could not be a valid or pertinent reason. Lack of evidence to hold him lawfully manifestly could not justify holding him unlawfully." *Id.* at 348. It made clear, however, that it did not mean to suggest "that in any case a duty to take a person arrested immediately before a magistrate for examination implies a right to be immediately discharged unless the State then and there produces testimony which would be sufficient to hold the prisoner after a full preliminary hearing or a full hearing on *habeas corpus*." *Id.* at 348-349. The Court found that *Cox v. State,* 192 Md. 525, 64 A. 2d 732 (1949) and *James v. State,* ·193 Md. 31, 65 A. 2d 888 (1949) were dispositive:

> "In the *Cox* case (followed in the *James* case) we held that the fact that evidence has been obtained unlawfully does not necessarily make it inadmissible, and that unless the facts show that the illegal arrest in itself constituted such duress as to make the confession involuntary, the same rule as to admissibility of the confession is applicable as where the arrest is legal." *Id.* at 349.[5]

It held that the test for the admissiblity of the confession was whether it was voluntarily given in the circumstances and was "the product of the suction process of interrogation" as to be "the reverse of voluntary." *Id.* at 349-351. *See Edwards v. State,* 194 Md. 387, 391-393, 71 A. 2d 487 (1950). In *White v. State,* 201 Md. 489, 94 A. 2d 447 (1953), it was claimed that White had been held for such a length of time before being taken before the magistrate as to make his confession involuntary and to affront his constitutional rights. Hammond, J., speaking for a unanimous Court, said:

> "This contention has been so recently made and so fully answered in *James v. State,* 193 Md. 31, 65 A.

---

**5.** For the present status of the law, *see* Everhart v. State, 274 Md. 459, 337 A. 2d 100 (1975); Ryon v. State, 29 Md. App. 62, 349 A. 2d 393 (1975), *aff'd,* 278 Md. 302, 363 A. 2d 243 (1976).

2d 888; *Grear v. State,* 194 Md. 335, 71 A. 2d 24; and *Edwards v. State,* 194 Md. 387, 71 A. 2d 487, in exhaustive and penetrating analyses of the law and the cases that we do not feel it is necessary, desirable, or appropriate to refish these waters. Suffice it to say that a very careful consideration of all of the circumstances of this case, both as to the manner in which the confession was obtained and the length of time during which the accused was held, leads us to believe that there is less possibility of injury to, or deprivation of, his constitutional rights than in the similar cases just cited." *Id.* at 493.

It is manifest that this Court consistently adhered to the view that a violation of the duty to take an arrestee immediately before a magistrate whether imposed by the common law or by statute did not *per se* render a confession inadmissible, its admissibility being determined under the voluntariness standard.

## II

Upon the creation of the District Court of Maryland in 1971, this Court adopted rules for its governance. It was then, through M.D.R. 709, effective 5 July 1971, that, over and above the common law duty, the right to speedy production before a judicial officer was secured to arrestees on a uniform statewide basis. "As originally proposed, the rule would have directly tracked the provisions of Rule 5 (a) of the Federal Rules of Criminal Procedure which as construed constitutes the so-called Mallory Rule. The language of the first sentence of M.D.R. 709 (a) following 'without unnecessary delay' was added to supply an interpretive gloss following vigorous objection to the earlier draft by Police Commissioner Pomerleau of Baltimore City and by the State's Attorneys' Association." 2 G. Liebmann, Maryland District Court Law and Practice (hereinafter referred to as *Liebmann*) § 941, at 142 (1976).[6] *See Mallory v. United States,* 354 U. S. 449, 77 S.

---

6. The majority suggest on the authority of *Liebmann,* that "[i]n response to comments from state and local law enforcement officials ... the proposed rule was modified to incorporate a presumption of illegality, which applies

Ct. 1356 (1957); *McNabb v. United States,* 318 U. S. 332, 63 S. Ct. 608 (1943).

The majority holds that the prompt presentment requirement of M.D.R. 723 a is mandatory. I am in accord with that holding, but not with all the reasons advanced to support it. I think that the express terms of the rule itself, declaring in unequivocal language that a "defendant *shall* be taken ... without unnecessary delay" to a judicial officer following arrest is sufficient in itself to denote an imperative obligation inconsistent with the exercise of discretion. *Moss v. Director,* 279 Md. 561, 564-565, 369 A. 2d 1011 (1977); *Bright v. Unsat. C. & J. Fund Bd.,* 275 Md. 165, 169, 338 A. 2d 248 (1975). I see no need to go further. The alternative reason presented by the majority suggests, at the least, constitutional overtones which were not intended by this Court in adopting the rule. It is true that the rule provides procedures whereby a person taken into custody is afforded the opportunity to be informed of and receive the benefit of certain rights, for example, advice as to the charges, right to counsel and preliminary hearing, and determinations with respect to pretrial release and probable cause. But the rule, like its counterpart in the federal system, is not derived from the federal or state constitutions beyond being the product of the exercise of the Court's supervisory authority over the administration of criminal justice. *See McNabb v. United States,* 318 U. S. at 341, *Cox v. State,* 192 Md. at 536.

### III

Accepting that the rule is mandatory, it does not follow that a violation of it automatically operates to exclude a statement

whenever an arrestee is detained by police beyond 24 hours or the first session of court following arrest without having been taken to a judicial officer." I do not interpret *Liebmann* as saying that. It seems to me that there is a significant distinction between a modification "to supply an interpretive gloss" and a modification "to incorporate a presumption of illegality." It appeared to *Liebmann,* however, that the modification of the rule, by implicitly defining permissible delay, in any event, repudiated the cases under Federal Rule 5 (a) excluding statements obtained during periods of delay resulting from unavailability of a magistrate. *Liebmann,* § 941, at 142-143. *Liebmann* notes, n. 3, at 143: "Thus it would be inappropriate for the Maryland courts to follow cases such as United States v. Middleton, 344 F.2d 78 (C.A.2d, 1965) and Coleman v. United States, 114 U.S. App. D. C. 185, 313 F.2d 576 (1962)."

voluntarily obtained. Had we so intended, an intention incidentally which would have been contrary to our prior decisions, it would have been a very simple task to manifest such intention. But the rule we adopted provides no sanctions for its violation.

The *per se* exclusionary rule adopted by the majority bestows full constitutional import to the right of an arrestee to be promptly taken before a judicial officer. It makes the right the equivalent of the constitutional prohibitions against unreasonable searches and seizures and self-incrimination. But the rule itself, regardless of the purpose it serves, lacks the constitutional basis which emerged from the Fourth Amendment's ban against unreasonable searches and seizures and the Fifth Amendment's ban against self-incrimination which justified the exclusionary rule for a violation of them. *See Miranda v. Arizona,* 384 U. S. 436, 86 S. Ct. 1602 (1966); *Mapp v. Ohio,* 367 U. S. 643, 81 S. Ct. 1684 (1961).

The *per se* exclusionary rule today adopted by this Court, is, as the majority observes, contrary to decisions of "the vast majority of state courts" and the present trend of federal courts, see footnote 5 of the majority opinion. As we have seen, it departs from the prior decisions of this Court relating to the issue. Moreover *Liebmann,* § 941, at 142, cautions:

> "The partial tracking of the language of the federal rule and the grounds urged for [the] modification [of M.D.R. 709 a] should not be taken as implying that a statement obtained by police during a period of delay not authorized by the rule would be excludable even though it otherwise meets *Miranda* standards since this possibility was not discussed when the rule was drawn."

If the possibility was discussed when the rule was recently revised, no resolution of the issue is reflected in M.D.R. 723 a as adopted.

The primary function of the exclusionary rule is the deterrence of future police misconduct. *United States v.*

*Janis,* 428 U. S. 433, 446, 96 S. Ct. 3021 (1976).[7] That function is ill served here. In my opinion, to exclude a voluntary confession from evidence merely because a police officer has presented an arrestee before a judicial officer a fraction of a second too late under the mandate of the rule, no matter what the reason, debases the judicial process. It is so patently against the interest of the general public and the sensible administration of criminal justice that I am not the least bit persuaded otherwise by the arguments advanced by the majority. "There is no war between the Constitution and common sense," *Mapp,* 367 U. S. at 657, but the adoption of a *per se* exclusionary rule as the sanction for violation of Rule 723 a certainly does not recognize this.

I cannot dispute the majority's belief that "the protection of the right of an accused to prompt production before a judicial officer following arrest will be most effectively accomplished by a *per se* exclusionary rule." But the *most effective* protection of a non-constitutional right of an accused is not the sole goal of criminal justice. There is also to be considered the protection of the right of society to have a person who has committed offenses against it answer for his acts according to the law of the land. The public good is not always enhanced by punishing the police for a procedural deficiency. In *United States v. Ceccolini,* U. S., 98, S. Ct. 1054, decided 21 March 1978 [67 L.W. 4229, 4232, 21 March 1978], the Supreme Court of the United States expressly reaffirmed an observation it made a half a century ago:

> " 'A criminal prosecution is more than a game in which the Government may be checkmated and the game lost merely because its officers have not played according to rule.' *McGuire v. United States,* 273 U.S. 95, 99 (1927)."

In short, I would not adopt a rule which requires that we reverse the judgment of the Court of Special Appeals and

7. The majority point out that the exclusionary rule has received sharp criticism from some quarters, including the Chief Justice of the United States. *See* Bivens v. Six Unknown Fed. Narcotics Agents, 403 U. S. 388, 416, 91 S. Ct. 1999 (1971) (Burger, C. J., dissenting).

award a new trial for no other reason than that the police were 45 minutes late in presenting Johnson before a judicial officer.

Chief Judge Murphy and Judge Smith authorize me to state that they join in the views expressed herein.

*Murphy, C. J., dissenting:*

The Court today holds that a confession to crime, voluntarily made by an accused person afforded the full panoply of *Miranda* warnings, is nevertheless inadmissible in evidence if it was made during a period of "unnecessary delay" in bringing the accused before a judicial officer in violation of former M.D.R. 709 a, now M.D.R. 723 a. In so concluding, the Court has not only adopted a position concededly at variance with the overwhelming weight of authority in the country, but has overruled, sub silentio, long-established and well-considered Maryland law to the contrary. The action taken by the Court will result in the exclusion of highly probative and reliable evidence and will most assuredly have a devastating impact on the administration of criminal justice in Maryland. Were the result reached by the Court mandated by the federal or state constitutions, or otherwise required by the prevailing law, I would, of course, unhesitatingly join in the Court's opinion. Since it plainly is not, I most respectfully dissent.

M.D.R. 709 a requires that an arrested person shall be brought before a judicial officer "without unnecessary delay" but in any event not later than the earlier of the first session of court after arrest or 24 hours. When the earlier of either of these outer limits is exceeded, the rule adopted by the Court would automatically exclude from evidence a confession made at any time thereafter, irrespective of the reason for the delay. The Court's per se exclusionary rule applies as well without regard to these prescribed maximum limits, since it operates to exclude any statement made during *any* period of delay in prompt presentment following arrest if the delay, irrespective of its length or the reason for it, was "unnecessary."

As the majority readily acknowledges, the per se exclusionary rule is not constitutionally mandated but derives

from an exercise by the Supreme Court of the United States of its supervisory authority over the lower federal courts. *McNabb v. United States,* 318 U. S. 332, 63 S. Ct. 608, 87 L.Ed. 819, decided in 1943; *Upshaw v. United States,* 335 U. S. 410, 69 S. Ct. 170, 93 L.Ed. 100, decided in 1948; and *Mallory v. United States,* 354 U. S. 449, 77 S. Ct. 1356, 1 L.Ed.2d 1479, decided in 1957, collectively make clear that it was the Supreme Court's view that the right of an accused person to prompt presentment before a judicial officer following arrest would be most effectively protected by a rule which automatically excluded from evidence confessions obtained during a period of "unnecessary delay" in presenting the accused for arraignment. Defining just what delay in presenting an arrested person before a judicial officer was "unnecessary" predictably caused great problems to courts required to grapple with such a vague and elusive concept. Because the rule was neither sensible nor clear, because it was unrealistic in application, unworkable in practice, and led to widely varying results, almost all states, including Maryland, rejected it. Indeed, language in *Mallory* itself has fostered confusion as to what constitutes "unnecessary delay," particularly delay for the purpose of additional police investigation. *Mallory* states at one point that arraignment should take place "as quickly as possible"; yet the Court also said:

> "The duty enjoined upon arresting officers to arraign 'without unnecessary delay' indicates that the command does not call for mechanical or automatic obedience. Circumstances may justify a brief delay between arrest and arraignment, as for instance, where the story volunteered by the accused is susceptible of quick verification through third parties. But the delay must not be of a nature to give opportunity for the extraction of a confession." 354 U. S. at 455.

In apparent recognition of the uncertainty which followed in the wake of its adoption of the *McNabb-Mallory* rule, the

Supreme Court observed in *Culombe v. Connecticut,* 367 U. S. 568, 81 S. Ct. 1860, 6 L.Ed.2d 1037 (1961):

"The McNabb Case was an innovation which derived from our concern and responsibility for fair modes of criminal proceeding in the federal courts. The States, in the large, have not adopted a similar exclusionary principle. And although we adhere unreservedly to McNabb for federal criminal cases, we have not extended its rule to state prosecutions as a requirement of the Fourteenth Amendment." 367 U. S. at 600-01 (footnotes omitted).

. The "unnecessary delay" formulation of *McNabb-Mallory* provides no guidelines with respect to the limits of permissible custodial interrogation prior to presentment, as the experience of the federal courts so graphically demonstrates. For example, an interrogation of eight hours following arrest was held not to constitute unnecessary delay in *United States v. Vita,* 294 F. 2d 524 (2d Cir. 1961), *cert. denied,* 369 U. S. 823 (1962), the court stating:

"We cannot agree with the appellant that federal law enforcement officers are so rigidly confined by Federal Rule of Criminal Procedure 5(a) that they must, immediately upon 'arrest,' cease all interrogation and formally charge the accused before a committing magistrate. Such an inflexible edict would paralyze the investigative process and eviscerate effective law enforcement." 294 F. 2d at 532..

*See also United States v. Ladson,* 294 F. 2d 535 (2d Cir. 1961), *cert. denied,* 369 U. S. 824 (1962) (delay in arraignment of one hour for interrogation not unnecessary); *Metoyer v. United States,* 250 F. 2d 30 (D.C. Cir. 1957) (two-hour delay permissible). Some courts, however, have taken the opposing view that a delay of even a few minutes for the purpose of interrogation renders a statement inadmissible. Thus, in *Alston v. United States,* 348 F. 2d 72, 73 (D.C. Cir. 1965), the court held that a delay of five minutes for the purpose of

interrogation was violative of the prompt presentment rule, and that the statement obtained was inadmissible, since "the arresting officers failed to take appellant before a committing magistrate 'as quickly as possible.'" *Accord, Greenwell v. United States,* 336 F. 2d 962 (D.C. Cir. 1964), *cert. denied,* 380 U. S. 923 (1965). One federal district judge surveyed cases within the District of Columbia circuit and found them to be in irreconcilable conflict. *See United States v. Fuller,* 243 F. Supp. 178 (D.D.C. 1965), *aff'd* 407 F. 2d 1199 (D.C. Cir. 1967), *aff'd on rehearing* (1968), *cert. denied,* 393 U. S. 1120 (1969). *See also* 3 J. Wigmore, *Evidence* § 862(a), at 612-15 (Chadbourn rev. 1970).

Congressional dissatisfaction with the *McNabb-Mallory* exclusionary rule eventually culminated in the passage of Title II of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. 3501; that statute provides in subsection (c) that a confession is not inadmissible solely because of delay in bringing the person before a commissioner if the trial judge finds that the confession was voluntarily made, if the weight to be given to it is left to the jury, and if the confession was made within six hours following arrest. While it is possible to construe this legislation as restricting the *McNabb-Mallory* rule to delays in excess of six hours, *see United States v. Erving,* 388 F. Supp. 1011 (W.D. Wis. 1975); Annot., 12 A.L.R. Fed. 377 (1972); 3 J. Wigmore, *supra,* § 862(a), at 619-623, the federal courts have generally construed the statute in a more liberal manner, rejecting *McNabb-Mallory* completely, and holding that a delay in arraignment greater than six hours "merely constitutes another factor to be considered by the trial judge in determining voluntariness." *United States v. Hathorn,* 451 F. 2d 1337, 1341 (5th Cir. 1971). *Accord, United States v. Gaines,* 555 F. 2d 618 (7th Cir. 1977); *United States v. Shoemaker,* 542 F. 2d 561 (10th Cir.), *cert. denied,* 429 U. S. 1004 (1976); *United States v. Edwards,* 539 F. 2d 689 (9th Cir.), *cert. denied,* 429 U. S. 984 (1976); *United States v. Bear Killer,* 534 F. 2d 1253 (8th Cir.), *cert. denied,* 429 U. S. 846 (1976); *Government of Virgin Islands v. Gereau,* 502 F. 2d 914 (3d Cir. 1974), *cert. denied,* 420 U. S. 909 (1975); *United States v. Halbert,* 436 F.

2d 1226 (9th Cir. 1970). Thus, the *McNabb-Mallory* doctrine has been effectively vitiated in the federal courts and replaced with a voluntariness test in which delay in arraignment is considered as only one factor in determining admissibility. *See* Note, *Admissibility of Confessions Obtained Between Arrest and Arraignment: Federal and Pennsylvania Approaches,* 79 Dickinson L. R. 309 (1975).

Similarly, as the majority here recognizes, the overwhelming majority of states have refused to adopt a per se exclusionary rule for violations of prompt arraignment statutes. *See, e.g., Rogers v. Superior Court of Alameda County,* 46 Cal. 2d 3, 291 P. 2d 929 (1955), where a defendant confessed four days after his arrest, and was not arraigned until the eighth day, in violation of a California statute which required presentment without unnecessary delay and in any event within two days after arrest. The court rejected the contention that the confession was inadmissible due to violation of the statute, stating that the test of admissibility is whether, considering all the circumstances, the statement was freely and voluntarily made. *See generally* cases cited in Annot., 19 A.L.R.2d 1331 (1951); 3 J. Wigmore, *supra,* § 862(a). Even in those few states which have adopted the *McNabb-Mallory* doctrine, the wisdom of the rule is sometimes questioned because it considers only the amount of time between arrest and confession without giving any consideration to whether the confession was voluntary, leading to the exclusion of statements freely given and constitutionally valid. *See, e.g., Commonwealth v. Tingle,* 451 Pa. 241, 301 A. 2d 701 (1973) (Eagen, J. concurring).

In *Taylor v. State,* 238 Md. 424, 209 A. 2d 595 (1965), our predecessors rejected the contention that statements were rendered inadmissible because the defendant had not been promptly taken before a judge of the municipal court, as then required by statute. We there pointed out that no time limit for arraignment was fixed in the statute, unlike the rule under consideration here, but that in any event "no mention is made to the effect that a failure to take such a person before one of the judges by a specified time shall render a voluntary confession inadmissible." 238 Md. at 432. We stated

that "the critical test of . . . admissibility depended upon whether the totality of the circumstances surrounding [the] making [of the confession] disclosed that the statements were freely and voluntarily made." Id. at 432.

The test of voluntariness enunciated in *Taylor* would allow the trial court to consider, in ruling on the admissibility of a confession, all the circumstances surrounding the confession, including the fact that the defendant has been illegally detained in violation of M.D.R. 709 a. Thus, the voluntariness test places emphasis not so much on the time of delay as on what occurred during the delay. Unnecessary delay is, of course, a factor in determining voluntariness, but it is not, and should not, be dispositive. Indeed, Maryland decisions have long recognized that the test of a confession's admissibility is whether it was voluntarily given. *See, e.g., Gill v. State,* 265 Md. 350, 289 A. 2d 575 (1972); *Price v. State,* 261 Md. 573, 277 A. 2d 256 (1971); *Streams v. State,* 238 Md. 278, 208 A. 2d 614 (1965); *Bean v. State,* 234 Md. 432, 199 A. 2d 773 (1964).

It is particularly unfortunate that the Court has chosen the instant case to overrule our prior precedents and adopt the now thoroughly eroded rationale of *McNabb-Mallory.* In view of the circumstances disclosed by the record, it is doubtful that the delay in bringing Johnson before a judicial officer actually violated the provisions of M.D.R. 709 a. Johnson surrendered to the police at 3:15 P.M. on January 30, 1975. Had the District Court then been in session, it would have been incumbent upon the police in complying with M.D.R. 709 a to bring Johnson before a judicial officer for his initial appearance not later than the end of that court session. The record does not disclose, however, whether the court was in session at the time of Johnson's arrest on January 30, 1975, or at any time thereafter on that day. Nor does it disclose that the delay in presenting Johnson before a District Court Commissioner was "unnecessary" within the contemplation of the rule. Johnson became ill with stomach pains almost immediately after his arrest and at his request, after refusing a police offer of hospitalization, he was permitted to remain in the station house lockup overnight. The testimony indicated

that had he been taken before a Commissioner while he was ill, the regulations precluded his referral to a county detention center. It cannot be said, therefore, that this period of delay was unnecessary; certainly it was not contrived by the police as a ruse to deliberately postpone Johnson's initial appearance before a judicial officer in order to subject him to interrogation and coerce a confession.

The record is similarly deficient in disclosing the time at which the first session of the District Court began or ended on the following day. It is perfectly clear, however, that at 9:45 A.M. on January 31, 1975, Johnson was once again afforded *Miranda* warnings and indicated a willingness to undergo police questioning. As of that time, neither of the outer prescribed time limits of M.D.R. 709 a had elapsed and, in view of the circumstances, the delay in bringing Johnson before a Commissioner was not "unnecessary." The record fairly discloses that beginning shortly after 9:45 A.M. on January 31, Johnson's agreement to submit to police interrogation culminated in a voluntary oral statement by which he incriminated himself in the Acme Market robbery.

While it is true that the confession was not ultimately reduced to writing and signed until 3:45 P.M. on January 31 — 30 minutes after the 24-hour period had expired — the substance of the confession was orally given well prior to that time. Detective Wallace, one of the two interrogating officers who had questioned Johnson, testified that during the five-hour interrogation conducted on January 31, Johnson gave a 10-page statement concerning the Acme robbery and, in addition, drew a diagram of the crime scene. In his testimony, Wallace explained how a statement is obtained: "Well we usually ask them after we get finished talking to them to try to put it in their own words and we try to do this line by line so that nothing is put into this statement in our own words but of the person who is being interrogated to try to put it into their own words. The time it was started was 9:45 A.M. and we have a ten page statement and it ended at 3:45 P.M."

The other interrogating officer, Detective Brown, said that

Johnson proceeded to make a statement after waiving his *Miranda* rights. He said that Johnson just "started talking" and that he "started writing." It is implicit in his testimony that Johnson began incriminating himself shortly after 9:45 A.M. and continued until the confession was ultimately completed and signed at 3:45 P.M. Brown further testified that during the course of his statement, Johnson admitted that he robbed the Acme with two other people. Johnson agreed to view a photographic lineup for the purpose of identifying his accomplices. The detectives filled out a photographic lineup form noting that Johnson viewed six photographs from which he positively identified the two other individuals. This form, introduced in evidence at the trial, was signed by Johnson; below his signature in a space marked "time" is written "2/56 PM." It is thus clear that at the very latest Johnson had incriminated himself in the Acme robbery by 2:56 P.M. on January 31, 19 minutes before the 24-hour period had run.

In view of these facts, the exception to the *McNabb-Mallory* rule created by *United States v. Mitchell,* 322 U. S. 65, 64 S. Ct. 896, 88 L. Ed. 1140 (1944), appears to be applicable. That case involved an oral confession voluntarily given by an accused shortly after his arrest. The Court there found that even though the accused was not brought before a committing magistrate for arraignment until some eight days after he had confessed, and that such failure constituted illegal detention, that the delay in presentment nevertheless did not require exclusion of the confession. The Court said that the confession was not induced by the illegal detention, nor was it obtained as a result of a violation of the accused's legal rights; consequently, it said, the admission of the confession did not constitute use by the government of the fruits of wrongdoing by its own officers. As in *Mitchell,* there was no demonstrated violation of M.D.R. 709 a prior to the commencement of Johnson's confession on the morning of January 31. That he did not sign the confession until much later in the day, some 30 minutes after the 24-hour period had expired, and because he was not actually brought before

a Commissioner until 4 P.M. that day, does not mandate the exclusion of the confession under the *McNabb-Mallory* rule, since its admission did not constitute use by the prosecution of the fruits of any wrongdoing on the part of the police. *See Government of Virgin Islands v. Gereau,* 502 F. 2d 914 (3d Cir. 1974), *cert. denied,* 420 U. S. 909 (1975); *Com. v. Jones,* Pa., 374 A. 2d 970 (1977).

It seems foolhardy in the extreme to so interpret the requirements of M.D.R. 709 a, as the majority has done, to mandate the automatic exclusion from evidence of a voluntary confession given under the circumstances present in this case. The benefits of the doctrine that the Court today adopts will accrue only to those who have made incriminating statements following arrest but prior to presentment before a judicial officer. No sanctions are provided to secure rights afforded to an accused person under M.D.R. 709 a who does not confess prior to prompt presentment, unless, of course, the ultimate exclusionary rule is to be applied in such instances, namely, outright and final release from all prosecution of an individual subjected to "unnecessary delay" in arraignment under M.D.R. 709 a — by no means an illogical extension of the Court's holding if the purpose of the exclusionary rule is to deter future police misconduct.

As a result of the majority's decision, the prosecution will be required affirmatively to establish, where challenged, that the confession was not made during a period of "unnecessary delay" in violation of M.D.R. 709 a, now M.D.R. 723 a. This burden upon the prosecution will be in addition to demonstrating, where the confession's admissibility is challenged, traditional voluntariness and compliance with all *Miranda* requirements. That the Court's holding will be afforded a retroactive effect, at least to 1971 when M.D.R. 709 a was first enacted, is more than likely, thus spawning a plethora of post conviction applications to overturn convictions long since final.

I would, therefore, affirm the judgments of conviction in this case. I fully concur in the dissenting views of my Brother

Orth and agree that while the provisions of M.D.R. 709 a
prescribe a mandatory rule for police conduct, a violation of
the rule does not, absent express provision for the sanction
in the rule itself, require exclusion of an otherwise voluntary
confession.

Judges Smith and Orth authorize me to state that they join
in the views expressed herein.